No. 23-3031

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

PEOPLE OF THE STATE OF ILLINOIS, ex rel. KWAME RAOUL,
Attorney General of the State of Illinois,

*Plaintiff-Appellee*,

v.

3M COMPANY,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Central District of Illinois
No. 4:22-cv-4075 (Hon. Sara Darrow)

**BRIEF OF APPELLANT 3M COMPANY**

Michael A. Scodro
Avi M. Kupfer
Gary A. Isaac
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
mscodro@mayerbrown.com

*Counsel for Appellant 3M Company*

Save As    Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 23-3031

Short Caption: Kwame Raoul v. 3M Company

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

3M Company

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Mayer Brown LLP

(3)    If the party, amicus or intervenor is a corporation:

i)      Identify all its parent corporations, if any; and

None.

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: s/ Michael A. Scodro          Date: 1/12/2024

Attorney's Printed Name:  Michael A. Scodro

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑   No ☐

Address:  71 South Wacker Drive, Chicago, IL 60606

Phone Number: (312) 701-8886          Fax Number:  (312) 523-4948

E-Mail Address: mscodro@mayerbrown.com

rev. 12/19 AK

| Save As | Clear Form |
|---|---|

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 23-3031

Short Caption: Kwame Raoul v. 3M Company

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    3M Company

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Mayer Brown LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        None.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: s/ Avi M. Kupfer    Date: 1/12/2024

Attorney's Printed Name: Avi M. Kupfer

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: 71 South Wacker Drive, Chicago, IL 60606

Phone Number: (312) 701-8330    Fax Number: (312) 523-4948

E-Mail Address: akupfer@mayerbrown.com

rev. 12/19 AK

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-3031

Short Caption: Kwame Raoul v. 3M Company

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)      The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

3M Company

(2)      The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Mayer Brown LLP

(3)      If the party, amicus or intervenor is a corporation:

      i)      Identify all its parent corporations, if any; and

           None.

      ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

           None.

(4)      Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)      Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: s/ Gary A. Isaac       Date: 1/12/2024

Attorney's Printed Name:  Gary A. Isaac

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐   **No** ☑

Address: 71 South Wacker Drive, Chicago, IL 60606

Phone Number: (312) 701-7025       Fax Number: (312) 706-8643

E-Mail Address: gisaac@mayerbrown.com

rev. 12/19 AK

# CORPORATE DISCLOSURE STATEMENT

1.   The full name of the party:

    3M Company

2.   The names of all law firms whose partners or associates have appeared for the parties in the case or are expected to appear for the party in this Court:

    Mayer Brown LLP

3.   If a party is a corporation, (i) identify all its parent corporations, if any; and (ii) list any publicly held company that owns 10% or more of that party's stock:

    3M Company is a publicly held corporation. It has no parent corporation, and no publicly held company owns 10% or more of its stock.

4.   Provide information required by Federal Rule of Appellate Procedure 26.1(b) – Organizational Victims in Criminal Cases:

    Not applicable

5.   Provide debtor information required by Federal Rule of Appellate Procedure 26.1(c) 1 & 2:

    Not applicable

Dated: January 12, 2024                    s/ *Michael A. Scodro*
                                           Michael A. Scodro

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................1

JURISDICTIONAL STATEMENT .................................................3

ISSUE PRESENTED ........................................................................3

STATEMENT OF THE CASE ..........................................................4

    A.    Factual Background.................................................................4

          1.    PFAS Are Used In A Variety Of Products, Including AFFF. ................................................4

          2.    Cases Involving PFAS Contamination Related To AFFF Are Consolidated In A Multidistrict Litigation. ..........................................................4

          3.    3M And Other Defendants In The Multidistrict Litigation Are Asserting A Government Contractor Defense.........................................................5

    B.    Procedural History.................................................................7

          1.    Illinois Filed Three Lawsuits In State Court Alleging That 3M Is Liable For PFAS Contamination Of The State's Natural Resources...........7

          2.    3M Removed The Lawsuits To Federal Court................10

          3.    The District Court Remanded This Case To State Court. ...........................................................13

SUMMARY OF THE ARGUMENT.................................................15

STANDARD OF REVIEW ..............................................................19

ARGUMENT....................................................................................19

THE DISTRICT COURT HAS JURISDICTION UNDER THE FEDERAL OFFICER REMOVAL STATUTE. ..........................................19

    A.    The Case Relates To 3M's Supply Of MilSpec AFFF To The Federal Government.....................................................21

    B.    The District Court Misconstrued The "Relating To" Requirement....................................................................27

## TABLE OF CONTENTS
(continued)

                                                                       **Page**

1.    The AFFF Disclaimer Did Not Sever The Connection Between This Case And MilSpec AFFF ...... 28

2.    3M Will Assert A Federal Government Contractor Defense In This Case. ...................................... 31

3.    Adopting The District Court's Construction Of The Federal Officer Removal Statute Would Result In Duplicative Litigation. ...................................... 38

CONCLUSION ......................................................... 40

ADDENDUM

SHORT APPENDIX

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Antonicelli v. Rodriguez,*
104 N.E.3d 1211 (Ill. 2018) ......................................................34

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.,*
357 F. Supp. 3d 1391 (J.P.M.L. 2018) ........................................5

*Baker v. Atl. Richfield Co.,*
962 F.3d 937 (7th Cir. 2020) ............................................*passim*

*Betzner v. Boeing Co.,*
910 F.3d 1010 (7th Cir. 2018) ............................................19, 20

*Boyle v. United Techs. Corp.,*
487 U.S. 500 (1988) ...................................................................35

*Cnty. Bd. of Arlington Cnty., Va. v. Express Scripts Pharm., Inc.,*
996 F.3d 243 (4th Cir. 2021) .....................................................36

*Curiale v. A Clemente, Inc.,*
2023 WL 4362722 (D.N.J. July 5, 2023) ...................................30

*Dart Cherokee Basin Operating Co., LLC v. Owens,*
574 U.S. 81 (2014) ....................................................................20

*Edmonds v. Compagnie Generale Transatlantique,*
443 U.S. 256 (1979) ..................................................................34

*Hammer v. HHS,*
905 F.3d 517 (7th Cir. 2018) .....................................................36

*Isaacson v. Dow Chem. Co.,*
517 F.3d 129 (2d Cir. 2008).......................................................22

*Jefferson Cnty., Ala. v. Acker,*
527 U.S. 423 (1999) ........................................................*passim*

*Lu Junhong v. Boeing Co.,*
792 F.3d 805 (7th Cir. 2015) ...............................................20, 26

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Maguire v. Hughes Aircraft Corp.*,
    912 F.2d 67 (3d Cir. 1990).......................................................35

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
    547 U.S. 71 (2006) ...............................................................38

*Minnesota v. Am. Petroleum Inst.*,
    63 F.4th 703 (8th Cir. 2023).................................................22

*Moore v. Elec. Boat Co.*,
    25 F.4th 30 (1st Cir. 2022) ...................................................32

*Nessel v. Chemguard, Inc.*,
    2021 WL 744683 (W.D. Mich. Jan. 6, 2021).......................... 29, 30, 31, 33

*New Hampshire v. 3M Co.*,
    2023 WL 2691376 (D.N.H. Mar. 29, 2023).............................31

*Padgett v. A & M Insulation Co.*,
    640 N.E.2d 21 (Ill. App. 3d 1994) ........................................34

*Reinbold v. Advanced Auto Parts, Inc.*,
    2018 WL 3036026 (S.D. Ill. June 19, 2018) ..........................30

*Ruppel v. CBS Corp.*,
    701 F.3d 1176 (7th Cir. 2012) ..............................................19

*Watson v. Philip Morris Cos., Inc.*,
    551 U.S. 142 (2007) .........................................................19, 36

*Willingham v. Morgan*,
    395 U.S. 402 (1969) ...................................................19, 32, 36

**Statutes**

28 U.S.C. § 1407(a).....................................................................39

28 U.S.C. § 1442 ..........................................................................3

28 U.S.C. § 1442(a)(1) ........................................................*passim*

28 U.S.C. § 1446(a).....................................................................20

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

28 U.S.C. § 1447(d) ......................................................................3

28 U.S.C. § 2107(a) ......................................................................3

Removal Clarification Act of 2011, § 2(b)(1)(A), 125 Stat. 545 ....................22

Ill. Rev. Stat. § 2-1117 ..................................................................37

Ill. Rev. Stat. § 2-1118 ..................................................................37

**Rules and Regulations**

48 C.F.R. § 9.203(a) ......................................................................7

Fed. R. App. P. 4(a)(1)(A) ..............................................................3

Fed. R. Civ. P. 42(a) ....................................................................39

**Other Authorities**

14C Charles Alan Wright et al., *Federal Practice and
    Procedure* (4th ed. 2023) ......................................................19, 20

84 Fed. Reg. 70,544 (Dec. 23, 2019) ..............................................4

Don DeYoung et al., U.S. Naval Research Lab., *Fulfilling the
    Roosevelts' Vision for American Naval Power (1923-2005)*
    (June 30, 2006) ................................................................4, 5, 6

Steven W. Feldman, *Government Contract Guidebook*
    (4th ed. 2020) ......................................................................6

H.R. Rep. No. 112-17 (2011) ......................................................22

Ill. Envtl. Prot. Agency, *Per- and Polyfluoroalkyl Substances
    (PFAS)* ................................................................................4

*MDL Statistics Report – Distribution of Pending MDL Dockets
    by District* (Dec. 15, 2023) ......................................................4

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

Office of the Under Sec'y of Def. for Acquisition, Tech., and Logistics, U.S. Dep't of Def., *Aqueous Film Forming Foam Report to Congress* (Oct. 2017)..................................................................6

*Restatement (Second) of Torts* (1979) .....................................................33, 34

U.S. Dep't of Def., *Mil-F-24385 QPL/QPD History for Type 3 AFFF* (June 2, 2020)...................................................................7

U.S. Dep't of Def., *Mil-F-24385 QPL/QPD History for Type 6 AFFF* (June 2, 2020)...................................................................7

U.S. Dep't of Def., *Provisions Governing Qualification: Qualified Products List and Qualified Manufacturers List* (Aug. 2019) ...................................................................7

U.S. Navy, *Military Specification: Fire Extinguishing Agent, Aqueous Film-Forming Foam (AFFF) Liquid Concentrate, Six Percent, for Fresh and Sea Water* (Nov. 21, 1969).........................6, 7

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully suggests that oral argument would be helpful to the Court because this appeal raises important questions about the construction and application of the statute that governs federal officer removal.

## INTRODUCTION

Illinois brought three lawsuits in state court alleging that per- and polyfluoroalkyl substances (PFAS) made by 3M Company and other companies contaminated the Mississippi River System and other sites and natural resources. As to 3M, the claims in all three actions were nearly identical except in one respect. The complaint in this case asserted damages due to contamination allegedly caused by PFAS discharged from a 3M facility in Cordova, Illinois, and it purported to disavow damages from PFAS used in aqueous film-forming foam (AFFF)—a product that 3M (and others) made for the United States military. The complaints in the two other cases disavowed damages related to PFAS from AFFF and non-AFFF products, respectively, and both complaints disavowed damages from PFAS discharged from the Cordova facility.

Illinois carved up its alleged injuries to the same sites and natural resources by PFAS source in a bid to avoid federal court for at least some portion of the claims and relief it seeks. It attempted to use the AFFF disavowal to insulate *this* suit—the Cordova suit—from federal officer removal, even if that will mean litigating overlapping issues in three cases in state and federal court.

The Court should not permit Illinois to divide its claims and damages to avoid federal jurisdiction. Congress decided that federal officers and those

working for them should have a federal forum when they are sued in connection with actions arising from their official duties. A defendant therefore is entitled to remove a state case to federal court when it plausibly alleges that the lawsuit is connected or associated—even if not causally—to acts it took under color of federal authority. That requirement, which courts construe to favor removal, is met here. 3M alleged in its removal notice that it made AFFF for the military pursuant to federal specifications, that a military installation downriver from the Cordova facility used such AFFF, and that PFAS from AFFF used at the military installation may have commingled with PFAS from the Cordova facility in the Mississippi River System and other natural resources at issue in this lawsuit.

The district court erred in holding that this case does not relate to 3M's supply of AFFF to the military due to the AFFF disclaimer in the Cordova complaint. That disclaimer does not obviate the need to resolve the difficult liability and causation questions about whether the Mississippi River System or other at-issue natural resources were contaminated by PFAS from AFFF that 3M supplied to the military. Congress has mandated that defendants are entitled to have those issues resolved in a federal forum. Further, this Court has squarely held in *Baker v. Atlantic Richfield Co.*, 962 F.3d 937 (7th Cir. 2020), that disclaiming damages from a product manufactured for the military cannot defeat federal officer jurisdiction if the notice of removal shows that the product may have contributed to the alleged

pollution. Under the removal statute, a defendant needs to show only that the case is plausibly associated with its federal act. This suit easily clears that low bar. The Court should reverse the district court's order remanding this case to state court.

## JURISDICTIONAL STATEMENT

3M removed this case to federal district court pursuant to the federal officer removal statute, 28 U.S.C. § 1442. The district court entered an order remanding the case on September 21, 2023. A1-14. This Court has jurisdiction under 28 U.S.C. § 1447(d), which provides that "an order remanding a case to the State court from which it was removed pursuant to" 28 U.S.C. § 1442 is "reviewable by appeal." 3M timely filed its notice of appeal on October 20, 2023. A227; *see* 28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1)(A).

## ISSUE PRESENTED

Whether the district court erred in holding that this case is not "relat[ed] to" 3M's supply of AFFF to the military and thus that federal jurisdiction is lacking under the federal officer removal statute, 28 U.S.C. § 1442(a)(1).

## STATEMENT OF THE CASE

**A.    Factual Background**

  **1.    PFAS Are Used In A Variety Of Products, Including AFFF.**

PFAS are manmade organic chemicals used in consumer goods, such as food packaging, nonstick cookware, and stain repellants, as well as in certain industrial products. *See* A58 ¶ 50; Ill. Envtl. Prot. Agency, *Per- and Polyfluoroalkyl Substances (PFAS)*, https://epa.illinois.gov/topics/water-quality/pfas.html (last visited Jan. 12, 2024). PFAS are constituents in aqueous film-forming foam (AFFF), which is used to extinguish flammable liquid fires. 84 Fed. Reg. 70,544, 70,545 (Dec. 23, 2019). AFFF is used to protect "civilian airfields, refineries, and fuel tank farms," and it "is in the inventory of almost all fire departments in the United States." Don DeYoung et al., U.S. Naval Research Lab., *Fulfilling the Roosevelts' Vision for American Naval Power (1923-2005)* 37 (June 30, 2006), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf (*Fulfilling the Roosevelts' Vision*).

  **2.    Cases Involving PFAS Contamination Related To AFFF Are Consolidated In A Multidistrict Litigation.**

There are over 6,600 pending lawsuits in federal court in which plaintiffs raise allegations related to PFAS from AFFF. *See* U.S. Judicial Panel on Multidistrict Litig., *MDL Statistics Report – Distribution of Pending MDL Dockets by District* 4 (Dec. 15, 2023), https://www.jpml.uscourts.gov/

sites/jpml/files/Pending_MDL_Dockets_By_District-December-15-2023.pdf.
The Judicial Panel on Multidistrict Litigation (JPML) centralized those
lawsuits in a single proceeding in the District of South Carolina. *Id.*

Since the lawsuits often involve "the same group of AFFF manufac-
turers" (including 3M), the JPML held that consolidation will "promote the
just and efficient conduct of th[e] litigation" for "the parties and witnesses."
*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d
1391, 1394 (J.P.M.L. 2018) (*AFFF Litig.*). The cases present "common ques-
tions of fact" about, among other things, the chemical properties and effects
of PFAS, and the manufacturers' knowledge of those properties and effects.
*Id.* The JPML in creating the AFFF multidistrict litigation thus held that
"[c]entralization will eliminate duplicative discovery," "prevent inconsistent
pretrial rulings," and "conserve the resources of the parties, their counsel,
and the judiciary." *Id.*

### 3.   3M And Other Defendants In The Multidistrict Liti-gation Are Asserting A Government Contractor De-fense.

One of the JPML's reasons for consolidating the AFFF lawsuits is that
"the AFFF manufacturers likely will assert identical government contractor
defenses in many of the actions." *AFFF Litig.*, 357 F. Supp. 3d at 1394.
AFFF is used to suppress fires on aircraft carriers and at airfields and other
military facilities. *Fulfilling the Roosevelts' Vision* 37. According to the De-
partment of Defense, AFFF is a "mission critical product" that "saves lives

and protects assets," Office of the Under Sec'y of Def. for Acquisition, Tech., and Logistics, U.S. Dep't of Def., *Aqueous Film Forming Foam Report to Congress* 1-2 (Oct. 2017), https://tinyurl.com/wshcww4, and its development has been "one of the most far-reaching benefits to worldwide aviation safety," *Fulfilling the Roosevelts' Vision* 37.

Although AFFF initially was developed by the Navy, the government determined that its manufacture required "the aid of the chemical industry." *Fulfilling the Roosevelts' Vision* 37. In 1969, the Navy issued mandatory technical requirements (known as military specifications or MilSpec) for AFFF supplied to the military by private firms. U.S. Navy, *Military Specification: Fire Extinguishing Agent, Aqueous Film-Forming Foam (AFFF) Liquid Concentrate, Six Percent, for Fresh and Sea Water* (Nov. 21, 1969), https://tinyurl.com/yxwotjpg (*AFFF Military Specification*); *see generally* Steven W. Feldman, *Government Contract Guidebook* § 4:14 (4th ed. 2020). The MilSpec directed that AFFF consist of fluorocarbon surfactants (*i.e.*, PFAS) and other compounds to conform to precise requirements, including requirements regarding viscosity, pH value, surface tension, specific gravity, interfacial tension, foamability, fire performance, and corrosion rate. *AFFF Military Specification* 2-3. AFFF suppliers were required to undertake inspection protocols and testing procedures "to assure supplies . . . conform to [the] prescribed requirements." *Id.* at 3-10. The Navy has amended the MilSpec multiple times since its initial promulgation.

To be eligible for military procurement, an AFFF product must be "list[ed] on the applicable Qualified Products List." *AFFF Military Specification* 2; *see* 48 C.F.R. § 9.203(a). The Navy adds a supplier's product to the list only after examining and testing it, and determining that it conforms to the MilSpec for that product. U.S. Dep't of Def., *Provisions Governing Qualification: Qualified Products List and Qualified Manufacturers List* 2 (Aug. 2019), https://tinyurl.com/y5asm5bw. The Navy periodically reviews products to "ensure continued integrity of the qualification status." *Id.* at 2.

AFFF that complies with the MilSpec for AFFF is known as MilSpec AFFF. For more than 30 years, AFFF products manufactured by 3M were included on the Qualified Products List for MilSpec AFFF. *See* MSJ Ex. 99, AFFF Litig., No. 2:18-mn-2873 (D.S.C. Nov. 5, 2021), ECF No. 1969-24 (U.S. Dep't of Def., *Mil-F-24385 QPL/QPD History for Type 3 AFFF* (June 2, 2020); U.S. Dep't of Def., *Mil-F-24385 QPL/QPD History for Type 6 AFFF* (June 2, 2020)).

B.    **Procedural History**

1.    **Illinois Filed Three Lawsuits In State Court Alleging That 3M Is Liable For PFAS Contamination Of The State's Natural Resources.**

Between March 2022 and April 2023, Illinois filed three complaints against 3M and other companies in state court alleging that PFAS contam-

7

inated its natural resources. As to 3M, the complaints were largely identical. Using similar language, they stated similar claims against 3M related to the design, manufacture, and supply of products containing PFAS. A82-104 ¶¶ 181-276; Complaint ¶¶ 604-710, People of the State of Illinois v. 3M Co., No. 23-cv-2620 (N.D. Ill. Apr. 26, 2023), ECF No. 1-1 (AFFF Complaint); Complaint ¶¶ 353-58, 375-462, People of the State of Illinois v. 3M Co., No. 23-cv-1341 (N.D. Ill. Mar. 3, 2023), ECF No. 1-1 (Non-AFFF Complaint). The complaints also contained the same allegations that 3M was aware of dangers associated with PFAS. A65 ¶ 87, A103 ¶¶ 268-69; AFFF Complaint ¶¶ 362, 681; Non-AFFF Complaint ¶¶ 141-68.

In all three complaints, Illinois broadly sought to recover for damages to the environment and natural resources caused by PFAS contamination. *See, e.g.*, A76-77 ¶¶ 145-48, A84 ¶ 191 (alleging contamination of "surface waters, groundwater, and wetlands at and around" a facility in Cordova, Illinois); AFFF Complaint ¶¶ 565-69, 606, 609 (similar allegations with respect to specified locations and "additional locations yet to be determined"); Non-AFFF Complaint ¶¶ 314-17, 355, 358 (similar). Each complaint alleged PFAS contamination to the Mississippi River System. *See, e.g.*, A68 ¶¶ 107-08, A74-75 ¶¶ 134-36, A84 ¶¶ 191-92; AFFF Complaint ¶¶ 497-501, 708(b); Non-AFFF Complaint ¶ 458(b). And each complaint sought to recover the

cost of investigating and remediating contamination from PFAS. *See* A45; AFFF Complaint ¶ 686; Non-AFFF Complaint ¶ 436.

But there was one difference among the complaints: Each purported to disclaim damages from different sources of PFAS. In this case, Illinois focused on PFAS allegedly discharged from a 3M manufacturing facility in Cordova, Illinois near the Mississippi River. A56 ¶ 36, A68 ¶ 105. That facility allegedly did not produce AFFF products, so the complaint was purportedly limited to contamination from a non-AFFF source, *i.e.*, the Cordova facility. A209. The Cordova complaint also included a carveout for "any PFAS that have contaminated Illinois' environment or natural resources from [AFFF]." A52 ¶ 11.

The complaints in the other cases disavowed "any PFAS contamination at issue" in the Cordova case. AFFF Complaint ¶ 21; Non-AFFF Complaint ¶ 19. In addition, the complaint in the second case (the putative Non-AFFF Action) disavowed damages from "PFAS . . . from . . . AFFF." Non-AFFF Complaint ¶ 17. And the complaint in the third case (the putative AFFF Action) sought to recover only damages from "PFAS associated with . . . AFFF." AFFF Complaint ¶ 20.

Thus, through the disclaimers, Illinois attempted to divide its damages into three lawsuits depending on the alleged sources of the purported

PFAS contamination of its natural resources.

## 2.    3M Removed The Lawsuits To Federal Court.

3M timely removed all three cases. 3M removed the AFFF Action and the Non-AFFF Action to federal court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). Notice of Removal, People of the State of Illinois v. 3M Co., No. 23-cv-2620 (N.D. Ill. Apr. 26, 2023), ECF No. 1; Notice of Removal, People of the State of Illinois v. 3M Co., No. 23-cv-1341 (N.D. Ill. Mar. 3, 2023), ECF No. 1. Illinois did not oppose removal of the AFFF Action, and, over Illinois' opposition, the JPML granted 3M's request to transfer that case to the multidistrict litigation. *See* Order, *AFFF Litig.*, MDL No. 2873 (J.P.M.L. Aug. 3, 2023), ECF No. 3512. The JPML also granted 3M's motion to transfer the Non-AFFF Action over Illinois' opposition, finding that it involved some of the same water sources at issue in other cases that were already pending in the multidistrict litigation. Order, *AFFF Litig.*, MDL No. 2873 (J.P.M.L. June 5, 2023), ECF No. 3257. Illinois' motion to remand the Non-AFFF Action to state court remains pending before the multidistrict litigation court. *See* Motion to Remand, People of the State of Illinois v. 3M Co., No. 23-cv-2540 (D.S.C. Mar. 24, 2023), ECF No. 23 (as transferred on June 8, 2023).

10

3M also timely removed this case to federal court pursuant to the federal officer removal statute. A22 ¶ 4. The notice of removal detailed how the case satisfies the three requirements for federal officer removal. First, 3M was acting at the direction of the Department of Defense when it designed and manufactured MilSpec AFFF used at military installations in Illinois. A33-34 ¶ 41. That included AFFF used at the Rock Island Arsenal, which is located on the Mississippi River 25 miles downriver from the Cordova facility. A21 ¶ 2, A27-30 ¶¶ 24-33.

Second, the notice of removal explained that the complaint seeks recovery for conduct "relating to" actions 3M undertook for the federal government, 28 U.S.C. § 1442(a)(1). The notice of removal cited an assessment of the Rock Island Arsenal conducted by the U.S. Army Corps of Engineers, which identified multiple areas of potential PFAS contamination in Illinois that originated from discharges of MilSpec AFFF from the Rock Island Arsenal into the Mississippi River System. A28-29 ¶¶ 26-30. For example, the assessment noted that the military conducted "firefighting foam operations . . . in the Mississippi River, directly upgradient of the City of Rock Island drinking water intake"; performed "[f]ire training operations" near "seeps located in the Mississippi River"; and stored MilSpec AFFF in facilities where the "storm sewer was compromised during flood events." A135.

The notice of removal explained that PFAS from MilSpec AFFF used, stored, and discharged at the Rock Island Arsenal may have commingled with PFAS from the Cordova facility at locations where Illinois is seeking to recover damages for PFAS contamination. A27-30 ¶¶ 24-33. For instance, the first count in the complaint alleged that the discharge of PFAS from the Cordova facility impacted "uses of the Mississippi River" and harmed "the Mississippi River, other surface waters, groundwater, and wetlands at and around the Cordova Facility." A94 ¶ 191; *see also* A68 ¶¶ 105-07, A76-80 ¶¶ 143-72. The notice of removal asserted that some of the PFAS that contaminated sites and natural resources downriver from the Cordova facility also plausibly came from MilSpec AFFF used at the Rock Island Arsenal. A32-33 ¶¶ 40-41. Indeed, the Army Corps report noted "the potential for PFAS impacts from other sources" besides AFFF in the Mississippi River System. A151. The notice of removal explained that resolving this case will involve complex factual questions concerning whether and how PFAS from MilSpec AFFF at the Rock Island Arsenal commingled with PFAS from the Cordova facility to contaminate the Mississippi River System and other natural resources. A29-30 ¶¶ 32-33.

Finally, the notice of removal explained that 3M has a plausible federal government contractor defense. A34-38 ¶¶ 42-48. The MilSpec for

12

AFFF provided "reasonably precise specifications . . . governing MilSpec AFFF formulation, performance, testing, storage, inspection, packaging and labeling." A35-36 ¶ 45. Since 3M manufactured AFFF consistent with those specifications, its "products appeared on the DOD Qualified Products List, which could have happened only if" the Department of Defense "had first determined that they conformed to the MilSpec." *Id.* And the government was adequately informed about alleged product-related dangers. The government "has long understood that AFFF contain[s] PFAS" and "can migrate through the soil and potentially reach groundwater," which "has been reported [to] raise environmental or health issues." A36-37 ¶ 46.[1]

### 3.    The District Court Remanded This Case To State Court.

Illinois moved to remand the case to state court, arguing that the case does not meet the requirements for federal officer removal. A3. Illinois primarily relied on the assertion that it is seeking to recover only for PFAS contamination stemming from the Cordova facility and that no AFFF was

---

[1]    3M moved to transfer this case to the multidistrict litigation. The JPML denied the motion, reasoning that "[w]hether and how AFFF factors into this action remains too uncertain to support transfer." Order 2, *In re AFFF Litig.*, MDL No. 2873 (J.P.M.L. Aug. 3, 2022), ECF No. 1510. But the JPML noted "the possibility that discovery and pleading practice could demonstrate" that the case is "more properly treated as an AFFF case for which transfer to [the multidistrict litigation] is warranted." *Id.*

produced there. A209. Illinois also argued that 3M's federal government contractor defense is especially "irrelevant" to Illinois' tort claims for which it will seek to hold 3M "jointly and severally liable." A218 at n.4.

The district court granted Illinois' motion. The court held that 3M met two of the requirements for federal officer removal. First, the court concluded that 3M "plausibly alleged that it assisted the federal government in producing" MilSpec AFFF. A6. The court explained that the notice of removal "allege[d] that for over three decades [3M] manufactured MilSpec AFFF" in accordance with detailed specifications "for sale to the U.S. military." *Id.* The court thus determined that 3M "has satisfied the 'acting under' requirement of the federal officer removal statute." *Id.* Second, the court determined that 3M plausibly alleged that it has a colorable federal government contractor defense. A7. The court explained that the removal notice alleged that 3M produced MilSpec AFFF that conformed to detailed military specifications, and that the government was adequately informed of any risks posed by MilSpec AFFF. *Id.*

The court held, however, that 3M failed to allege that the case "relat[es] to" MilSpec AFFF, 28 U.S.C. § 1442(a)(1). The court reasoned that the complaint "expressly defines PFAS as non-AFFF PFAS" and "only seeks relief for PFAS contamination from the Cordova Facility," where 3M "does

14

not assert . . . that it produced MilSpec AFFF." A10. The court further reasoned that if 3M establishes "that a certain portion of the contamination" of a given natural resource "stemmed from MilSpec AFFF," "that contamination is eliminated from the case" without the need for 3M to assert "the federal government contractor defense as to that source of contamination." A11-12. The court therefore concluded that it is "impossible" for 3M "to be held liable for damages stemming from its actions under federal authority." A12. The court thus held that the case is not "connected or associated" with 3M's "production of MilSpec AFFF." A10.

## SUMMARY OF THE ARGUMENT

This case should proceed in federal court. The district court has jurisdiction under the federal officer removal statute, which requires that the notice of removal include plausible allegations that (1) 3M was acting under a federal officer's authority when it produced MilSpec AFFF; (2) 3M will assert a colorable federal defense in this case; and (3) the lawsuit is for or relating to the actions 3M took pursuant to federal authority. The district court correctly held that 3M satisfied the first two requirements—3M was acting under a federal officer when it supplied MilSpec AFFF to the military, and it has a colorable federal government contractor defense. But the court erred in holding that the case is not related to 3M's supply of MilSpec

AFFF.

A. Under a prior version of the federal officer removal statute, the removing defendant had to allege a causal connection between the case and the defendant's actions performed under a federal officer. But Congress amended the statute in 2011 to make removal easier. Under the amended version of the statute, a defendant can remove a case that is *related to* its federal actions regardless of whether that action caused the alleged harm. A case therefore is removable if the notice of removal plausibly alleges a connection or association to the defendant's federal action, even if that connection or association is not causal.

The removal notice here easily satisfies that requirement. 3M plausibly alleged that the Mississippi River System and other natural resources at issue in this case may have been contaminated by PFAS that came from both the Cordova facility and MilSpec AFFF discharged from the nearby Rock Island Arsenal. The factfinder will have to determine where and how the military used MilSpec AFFF at the Rock Island Arsenal, whether MilSpec AFFF migrated from that military facility to the natural resources at issue, and whether the PFAS chemicals found in those natural resources are attributable, at least in part, to MilSpec AFFF. The case therefore relates to MilSpec AFFF.

Although the complaint defines PFAS not to include PFAS from AFFF, that does not sever this case's connection to MilSpec AFFF. This Court has held that a plaintiff cannot defeat federal officer jurisdiction by disclaiming damages caused by a product made for the federal government. Where a notice of removal plausibly alleges that waste streams from a military product contributed to the asserted pollution, the defendant may remove the case so that a federal court may resolve those difficult, fact-intensive causation questions that will depend on expert testimony and analysis. That is precisely what 3M did here. The case thus relates to MilSpec AFFF.

B. The district court misinterpreted the "relating to" requirement to impose additional conditions on removal. First, the district court reasoned that Illinois in this case has renounced damages "stemming from" AFFF (even though it is pursuing those damages in the AFFF Action and thus has not in fact disclaimed any damages). In so reasoning, the court applied the incorrect removal standard. It relied on the pre-2011 standard, which required a causal connection between the alleged harm and the defendant's federal act, rather than the operative standard, under which any connection or association to MilSpec AFFF is sufficient for removal. The court also found that the AFFF disclaimer in the complaint makes it "[un]necessary" for 3M to assert its federal government contractor defense. But this Court

17

has held that a plaintiff cannot avoid federal officer jurisdiction by disclaiming harm from federal waste streams.

Even if the district court were correct that the federal-defense requirement were relevant to the separate relating-to requirement, the court erred in holding that 3M will not raise its federal government contractor defense in this case. There are a number of circumstances in which 3M will raise that defense, including in disputing the source of the alleged PFAS pollution and opposing joint-and-several liability. Those issues involve difficult questions of liability and damages that Congress intended for federal courts to resolve.

Finally, the district court's interpretation of the federal officer removal statute would result in wasteful, duplicative litigation in state and federal court and unfairly allow Illinois several bites at the damages apple. This Court should not countenance a construction of the statute under which a plaintiff may slice and dice its damages from PFAS contamination of overlapping sites and natural resources across three separate lawsuits based on the alleged sources of the PFAS.

## STANDARD OF REVIEW

This Court "review[s] subject-matter jurisdiction and the propriety of the removal of a state-court action *de novo*." *Betzner v. Boeing Co.*, 910 F.3d 1010, 1014 (7th Cir. 2018).

## ARGUMENT

## THE DISTRICT COURT HAS JURISDICTION UNDER THE FEDERAL OFFICER REMOVAL STATUTE.

Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), a defendant may in certain circumstances remove a civil action commenced in state court to federal district court. The action must be against "any person acting under" a federal officer and "for or relating to any act under color of such office." *Id.* Courts have recognized three requirements that a person must satisfy to remove a case pursuant to the federal officer removal statute: (i) the removing defendant must be "'acting under' the United States, its agencies, or its officers"; (ii) the case must be "for or relating to any act under color of such office"; and (iii) the removing defendant must have "a colorable federal defense to the plaintiff's claim." *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1180-81 (7th Cir. 2012).

Those requirements are "liberally construed" in favor of removal. *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007); *see Willingham v. Morgan*, 395 U.S. 402, 406 (1969) (rejecting a "'narrow' or 'limited'" reading of the federal officer removal statute). And courts apply "the same liberal

rules employed in testing the sufficiency of a pleading . . . to appraise the sufficiency of a defendant's notice of removal." 14C *Federal Practice and Procedure* § 3733 & n.17 (Rev. 4th ed. 2023) (collecting cases); *see* 28 U.S.C. § 1446(a) (removal notice must include "a short and plain statement of the grounds for removal").

Under that standard, the Supreme Court has advised, "a defendant's notice of removal need include only . . . plausible allegation[s]" regarding the removal requirements, *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014), and courts must "credit the [removing defendant's] theory of the case," *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 432 (1999). This Court thus has "rejected the notion that federal jurisdiction depends on a high degree of certainty that jurisdictional facts exist." *Betzner*, 910 F.3d at 1014 (internal quotations omitted). Rather, the allegations in the notice of removal "control unless it is legally impossible for them to be true." *Lu Junhong v. Boeing Co.*, 792 F.3d 805, 814-15 (7th Cir. 2015).

The district court correctly held that 3M satisfied two of the requirements for federal officer removal. 3M was "acting under" a federal officer when it produced MilSpec AFFF, and it has a colorable federal government contractor defense regarding that production. A6-7. But the district court erred in holding that 3M's removal notice did not allege facts showing that the case plausibly "relat[es] to" 3M's supply of MilSpec AFFF to the federal

government. 3M alleged that the Mississippi River System and other at-issue natural resources were contaminated by PFAS both from releases from the Cordova facility and MilSpec AFFF discharged from the downriver Rock Island Arsenal. The factfinder thus will need to undertake a complex analysis of whether and to what extent Illinois' damages resulted from contamination that originated from MilSpec AFFF. And as this Court has held, a plaintiff cannot use a disclaimer to avoid federal officer jurisdiction when the case involves complicated causation questions concerning the defendant's federal actions. The district court erroneously focused on whether 3M will need to assert its federal government contractor defense. The relating-to requirement is distinct from the separate requirement that the removing defendant have a colorable federal defense (which the district court held that 3M satisfied). Regardless, 3M may need to assert its defense in a number of situations that may arise in this case, including in disputing causation and limiting damages.

### A.   The Case Relates To 3M's Supply Of MilSpec AFFF To The Federal Government.

A defendant removing a case on federal officer grounds must plausibly allege that the lawsuit is "for or relating to" the act taken under a federal officer or agency. 28 U.S.C. § 1442(a)(1). Establishing that a lawsuit is "for"

an act under a federal officer requires showing "a nexus, a causal connection" between the official act and the conduct alleged. *Acker*, 527 U.S. at 431 (internal quotations omitted). The "hurdle erected by this requirement is quite low." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008).

In 2011, Congress "lower[ed]" that hurdle even further by amending the federal officer removal statute. *Minnesota v. Am. Petroleum Inst.*, 63 F.4th 703, 715 (8th Cir. 2023) (collecting cases); *see* Removal Clarification Act of 2011, § 2(b)(1)(A), 125 Stat. 545, 545. As amended, the statute permits removal if the defendant plausibly alleges that the case is either "for *or relating to*" an act under a federal officer. 28 U.S.C. § 1442(a)(1) (emphasis added). Accordingly, the amended language "broaden[ed] the universe of acts that enable . . . remov[al] to Federal court." H.R. Rep. No. 112-17, at 6 (2011). Thus, as this Court has explained, federal officer removal now is available in actions "not just *causally* connected, but alternatively *connected* or *associated*, with acts under color of federal office." *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 943 (7th Cir. 2020).

The notice of removal here alleged facts that easily clear that bar. The complaint seeks damages for alleged PFAS contamination of the Mississippi River System and other natural resources around the Cordova facility. A68 ¶ 105; *see also* A68 ¶¶ 107-08, A72-75 ¶¶ 129-36, A76 ¶ 143, A76-82 ¶¶ 145-80, A84 ¶¶ 190-92. 3M's notice of removal explained that the alleged PFAS

contamination of such sites and natural resources plausibly came from Mil-Spec AFFF that 3M supplied to the military in addition to discharges from the Cordova facility. A27-30 ¶¶ 24-34. That is because MilSpec AFFF from the Rock Island Arsenal was stored, used, and disposed of near or into the Mississippi River System and other natural resources at issue in this case. A28-29 ¶¶ 26-32. Illinois has never disputed those allegations in 3M's notice of removal. And even if Illinois were to dispute them, the place to resolve such disputes is in federal court.

For natural resources like the Mississippi River System and surrounding areas, the parties thus must undertake discovery, and the court must conduct a fact-intensive analysis, regarding the supply, use, and movement of MilSpec AFFF at the Rock Island Arsenal. As the district court acknowledged, 3M will seek to establish that some "of the contamination stemmed from MilSpec AFFF released from the Rock Island Arsenal." A12. And it is far from clear that Illinois will be able to distinguish between Mil-Spec AFFF and non-AFFF sources at any given contaminated site, because those sources include the same PFAS chemicals. Illinois has presented no evidence that PFAS molecules found in the Mississippi River System and other natural resources can be distinguished in a manner that would allow a factfinder to trace the ultimate source of those molecules to the Cordova facility rather than MilSpec AFFF from the Rock Island Arsenal. *Compare*

A27 ¶ 22, *with* A56 ¶ 43.

The factfinder thus will need to address how the military used Mil-Spec AFFF at the Rock Island Arsenal, how that MilSpec AFFF migrated to the Mississippi River System and other at-issue natural resources, and whether the PFAS chemicals found in those natural resources are attributable (at least in part) to MilSpec AFFF in addition to releases from the Cordova facility. The need for that fact-intensive causation inquiry makes this case "connected or associated" with MilSpec AFFF. *Baker*, 962 F.3d at 945.

The complaint's disclaimer of damages from AFFF, A52 ¶ 11, does not sever the case's connection or association to MilSpec AFFF. This Court dealt with a similar disclaimer in *Baker v. Atlantic Richfield Co.*, *supra*, and it held that the case belonged in federal court. In *Baker*, residents alleged that DuPont and other companies operated facilities that released lead, arsenic, and other substances that contaminated the soil around the residents' housing complex. 962 F.3d at 939-41. The complaint alleged that the case did "not pertain to DuPont's manufacture and production of Freon-12" for the military. First Amended Complaint ¶ 67, Baker v. Atl. Richfield Co., No. 17-cv-429 (N.D. Ind. Oct. 23, 2017), ECF No. 13. DuPont nonetheless removed the case to federal court, alleging that its "manufacture of Freon-12" under

the direction of the government "resulted in" some of the alleged soil contamination. *Baker*, 962 F.3d at 941. The residents moved to remand the case to state court, pointing to the statement in their complaint disclaiming damages from Freon-12. *Id.* at 941, 945 n.3. The district court credited the disclaimer and remanded the case. *Id.* at 941.

This Court reversed. In upholding removal, the Court explained that "a federal court should be the one to resolve" the "difficult causation question" of whether the contamination arose in part "from products DuPont manufactured for the government." *Baker*, 962 F.3d at 945 n.3. In so holding, the Court rejected the residents' argument that the disclaimer in the complaint defeated federal jurisdiction. *See* Brief of Plaintiffs-Appellees, Baker v. Atlantic Richfield Co., 2020 U.S. 7th Cir. Briefs LEXIS 677, at *47 (7th Cir. Jan. 8, 2020) ("The disclaimer . . . unequivocally says this case has nothing to do with Freon-12."). "Although the Residents purport to disclaim that their lawsuit is about DuPont's manufacture of Freon-12," the Court explained, the notice of removal plausibly alleged that DuPont's "Freon-12 production resulted in waste streams" that contaminated the soil around the housing complex. *Baker*, 962 F.3d at 945 n.3. The Court therefore held that the case related to DuPont's operations under the federal government and belonged in federal court. *Id.* at 944-45.

*Baker* is on all fours with this case. Like the residents in *Baker*, Illinois seeks to recover for damages allegedly caused by chemical pollution to a particular area (the Mississippi River System and other natural resources "at and around the Cordova Facility," A76 ¶ 143) while disclaiming recovery for the portion of damages caused by a product made for the military (Mil-Spec AFFF). But this Court foreclosed that argument in *Baker*, holding that a plaintiff cannot avoid federal court by picking and choosing in a complaint the particular "waste streams" for which it wants to recover damages. 962 F.3d at 945 n.3. And just like the *Baker* parties that "dispute[d] whether the . . . injuries ar[o]se from products . . . manufactured for the government," *id.*, the parties here dispute whether the alleged PFAS pollution arose from MilSpec AFFF. Citing the Army Corps report, 3M's removal notice plausibly alleged that the pollution was caused at least in part by MilSpec AFFF discharged from the Rock Island Arsenal. A27-30 ¶¶ 24-33.

The Court must "credit" 3M's allegations, *Acker*, 527 U.S. at 432, which "control unless it is legally impossible for them to be true," *Lu Junhong*, 792 F.3d at 814-15. Where, as here, the parties "dispute whether the . . . injuries arise from products . . . manufactured for the government," and the notice of removal plausibly alleges that they do, this Court has held that federal officer removal is warranted. *Baker*, 962 F.3d at 945 n.3. The result here thus should be the same as in *Baker*. 3M should have the benefit of a

26

federal forum for resolving the "difficult causation question" of whether alleged PFAS contamination of the Mississippi River System and other natural resources downriver from the Cordova facility is attributable at least in part to MilSpec AFFF. *Id.*

## B. The District Court Misconstrued The "Relating To" Requirement.

The district court held that this case does not relate to MilSpec AFFF because Illinois has "renounc[ed] all claims stemming from" MilSpec AFFF, and it is "[un]necessary" for 3M to assert a federal defense. A10. But the court applied the incorrect removal standard. It relied on the pre-2011 standard, which required the removing defendant to allege that its federal act caused the plaintiff's harm, rather than the operative standard, which requires only a plausible connection or association. And as discussed above, this Court has held that a plaintiff cannot avoid federal officer jurisdiction by disclaiming harm from federal waste streams. Further, even if a colorable federal defense were relevant to the "relating to" question (and it is not), the court erred in holding that 3M will have no occasion to raise its federal government contractor defense. There are a number of circumstances in which 3M may need to, and is entitled to, raise that defense. While the validity of the defense will present complex questions, the propriety of removal does not depend on the answers.

### 1. The AFFF Disclaimer Did Not Sever The Connection Between This Case And MilSpec AFFF.

The district court erred in holding (A12) that this case is not "relat[ed] to" MilSpec AFFF, 28 U.S.C. § 1442(a)(1). The district court reasoned that the disclaimer makes it "impossible" for 3M "to be held liable for damages *stemming from* its actions under federal authority." A12 (emphasis added). But as set out above, that is not the correct test. Under the 2011 amendment to the federal officer removal statute, a case is removable not only when it is "for," 28 U.S.C. § 1442(a)(1)—*i.e.*, "causal[ly] connect[ed]" to, *Acker*, 527 U.S. at 431—the federal act. A case is also removable if it "relat[es] to" the federal act, 28 U.S.C. § 1442(a)(1), through a "connection or association" that is not necessarily causal, *Baker*, 962 F.3d at 944. As discussed, this case readily clears that low bar. The notice of removal plausibly alleged that this case presents difficult "causation question[s]" about whether MilSpec AFFF used at the nearby Rock Island Arsenal is a source of the alleged PFAS contamination of the Mississippi River System and other natural resources downriver from the Cordova facility, *Baker*, 962 F.3d at 945 n.3, even if the factfinder ultimately determines that Illinois' asserted damages do not "stem[] from" MilSpec AFFF, A12. This case therefore is related to MilSpec AFFF.

The district court also reasoned that it is not "necessary" for 3M to

28

assert its federal government contractor defense because the complaint re-
nounced claims stemming from 3M's supply of MilSpec AFFF to the federal
government. A10. But even if the court were correct that 3M will have no
occasion to assert its government contractor defense (and as discussed be-
low, that is incorrect), that still would not erode this case's "relati[on] to"
MilSpec AFFF, 28 U.S.C. § 1442(a)(1). As discussed, this Court held in
*Baker* that disclaiming damages from a product manufactured for the mili-
tary cannot defeat federal officer jurisdiction if the notice of removal shows
that the product may have contributed to the alleged pollution. 962 F.3d at
944, 945 n.3. Where the parties "dispute whether the . . . injuries arise from
products . . .  manufactured for the government," a "federal court should be
the one to resolve" that "difficult causation question." *Id.* at 945 n.3.

Other courts likewise have held that a defendant cannot defeat federal
officer jurisdiction by disclaiming the portion of its damages caused by a
product made for the military. For instance, in *Nessel v. Chemguard, Inc.*,
2021 WL 744683 (W.D. Mich. Jan. 6, 2021), the State of Michigan "surgi-
cally divide[d]" two complaints "between Commercial and MilSpec AFFF."
*Id.* at *3. The district court there denied Michigan's motion to remand the
commercial AFFF case. Like this Court in *Baker*, that court explained that
the case would entail "a detailed fact-finding process" regarding "whether

29

the injuries from MilSpec and Commercial AFFF can be distinguished." *Id.*
The court thus held that Michigan could not use the disclaimer to "prevent
Defendants from raising the production of MilSpec AFFF as a defense or an
alternate theory" of harm. *Id.* Other courts have reached the same conclu-
sion when faced with complaints purporting to disclaim damages from a
federal waste stream. *See, e.g.*, *Curiale v. A Clemente, Inc.*, 2023 WL
4362722, at \*6 (D.N.J. July 5, 2023) (denying remand motion and holding
that chemical manufacturer was "entitled to put forward an alternate the-
ory of causation . . . by asserting that the injuries" may have "resulted from
activity . . . engaged in at the federal government's instruction").[2]

The district court here was wrong to discount *Nessel* on the theory
that 3M "cannot be held liable for contamination from the Rock Island Ar-
senal" on account of the AFFF disclaimer. A11-12. *Nessel* explained that

---

[2]  The district court erred in relying (A10) on dicta in *Reinbold v. Advanced
Auto Parts, Inc.*, 2018 WL 3036026 (S.D. Ill. June 19, 2018), which denied a
motion to remand a case removed on federal officer grounds. *Reinbold* stated
that courts have remanded where "the plaintiff expressly disclaimed the
claims upon which federal officer removal was based." *Id.* at \*2. But *Rein-
bold* is an unpublished order that had no occasion to consider this Court's
later holding in *Baker v. Atlantic Richfield Co.*, *supra*, that a plaintiff cannot
defeat federal officer jurisdiction by disclaiming a plausible federal waste
stream. 962 F.3d at 945 n.3. Further, *Reinbold* involved a plaintiff who dis-
claimed federal-related damages altogether, 2018 WL 3036026, at \*2, rather
than dividing its damages from pollution of the same natural resources
across three lawsuits against the same party.

notwithstanding a disclaimer, the court that ultimately adjudicates a case where the complaint disclaims damages from MilSpec AFFF must undertake a "detailed fact-finding process to determine whether the injuries from" disparate sources of PFAS are distinguishable. 2021 WL 744683, at *3. Illinois' carveout for "any PFAS that have contaminated Illinois' environment or natural resources from" AFFF, A52 ¶ 11, does not foreclose that detailed fact-finding process. *See also* A12 (citing *New Hampshire v. 3M Co.*, 2023 WL 2691376, at *8 (D.N.H. Mar. 29, 2023), which did not consider the need to undertake such a detailed factfinding). This Court has held that the need to resolve "difficult causation question[s]" about whether alleged contamination resulted from a federal action means that a case is related to the federal action and thus should be "resolve[d]" in "federal court." *Baker*, 962 F.3d at 945 n.3.

In sum, Illinois' disclaimer does not change the fact that this case relates to 3M's supply of MilSpec AFFF.

## 2.  3M Will Assert A Federal Government Contractor Defense In This Case.

Even if the colorable-federal-defense requirement were germane to whether a defendant has satisfied the separate "relating to" requirement, 28 U.S.C. § 1442(a)(1), the district court was wrong to hold that 3M's federal government contractor defense is "irrelevant" in this case. A12. The Su-

preme Court has rejected "a narrow, grudging interpretation" of the "colorable federal defense" requirement. *Acker*, 527 U.S. at 431. A federal defense is colorable "unless it is immaterial and made solely for the purpose of obtaining jurisdiction or wholly insubstantial and frivolous." *Moore v. Elec. Boat Co.*, 25 F.4th 30, 37 (1st Cir. 2022) (internal quotations omitted); *see Willingham*, 395 U.S. at 407 (A defendant "need not win his case before he can have it removed.").

As the notice of removal explained, 3M may raise the federal government contractor defense at several points in the litigation. 3M will assert the federal government contractor defense in contesting liability and causation. It also may raise the defense to limit any damages awarded in this case.

1. 3M will assert the federal government contractor defense each time it seeks to establish that PFAS contamination was caused by MilSpec AFFF and to rebut the State's arguments that the alleged contamination is solely the result of PFAS from non-AFFF sources. 3M plausibly alleged that MilSpec AFFF from the Rock Island Arsenal commingled with PFAS from the Cordova facility and contaminated the Mississippi River System and other at-issue natural resources. A27-30 ¶¶ 24-33. 3M must present evidence to prove this defense, and each time 3M elicits evidence that MilSpec AFFF caused some or all of the PFAS contamination, it necessarily will be presenting the federal government contractor defense. Likewise, 3M is entitled

to explain its conduct with respect to all aspects of the government contractor defense to rebut liability in whole or in part. In response, Illinois will have the opportunity to present competing evidence, and ultimately the factfinder will make a determination. Presenting evidence about the relevant conduct and cause of a plaintiff's injury is part and parcel of asserting a federal government contractor defense, and thus Illinois cannot use its pleading to "prevent Defendants from raising the production of MilSpec AFFF as a defense or an alternate theory" of harm. *Nessel*, 2021 WL 744683, at \*1, \*3. As *Baker* recognized, this "difficult causation question" is one "that a federal court should . . . resolve." 962 F.3d at 945 n.3.

2. 3M also may raise its government contractor defense to limit a damages award to damages arising from contamination upriver from the Rock Island Arsenal. If the factfinder cannot determine how much PFAS contamination of the Mississippi River System and other at-issue natural resources downriver from the Arsenal was from non-AFFF sources and how much was from MilSpec AFFF, then 3M may assert the federal contractor defense in arguing that Illinois may not recover any damages related to PFAS pollution of those natural resources.

For "indivisible injury" cases, Illinois has adopted the approach in the *Second Restatement of Torts*. Under that approach, "[t]wo or more persons are jointly and severally liable under the circumstances creating primary

accountability, directly producing a single, indivisible injury by their con-current negligence." *Antonicelli v. Rodriguez*, 104 N.E.3d 1211, 1217 (Ill. 2018) (internal quotations and alterations omitted). That approach has been applied in toxic tort cases to assess whether one defendant may be held liable for all of the harm caused to the plaintiff. *See, e.g.*, *Padgett v. A & M Insulation Co.*, 640 N.E.2d 21, 23 (Ill. App. 3d 1994). And under the *Second Restatement*, if an indivisible injury is caused partly by an immune tortfeasor, the remaining defendants may be liable for the entire injury. *See Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 260 n.8 (1979) (citing *Restatement (Second) of Torts* §§ 433A, 880 (1979)).

Here, Illinois plans to assert a joint-and-several theory of liability, A218 at n.4, to hold 3M liable for all PFAS pollution of the area near the Cordova facility, including the Mississippi River System downriver from the Rock Island Arsenal. The district court assumed that the factfinder will be able to "eliminate[]" from the case the "portion of the contamination [that] stemmed from MilSpec AFFF." A12. Yet the remand motion provided no evidence that PFAS contamination from MilSpec AFFF and non-AFFF sources will be distinguishable. To the contrary, whether the factfinder will be able to determine the extent to which the PFAS contamination of a given natural resource came from MilSpec AFFF versus non-AFFF sources will be the subject of expert testimony after factual discovery. There is no evidence in the record that PFAS molecules found in the environment can be

distinguished in a manner that would allow a factfinder to trace the ultimate source of those molecules to MilSpec AFFF. And in that scenario, Illinois has indicated that it will seek to hold 3M jointly-and-severally liable for all pollution of a site or natural resources based only on PFAS from a non-AFFF source, *i.e.*, originating from the Cordova facility.

As a result, 3M is entitled to invoke its government contractor defense to assert that Illinois' joint-and-several liability rules cannot be applied to hold 3M liable for the entire harm. The defense exists, the Supreme Court has explained, because in "areas . . . involving uniquely federal interests," state law is "pre-empted and replaced." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988). The defense thus disrupts normal liability rules when "a significant conflict exists between an identifiable federal policy or interest and the [operation] of state law." *Id.* at 507 (internal quotations omitted); *see Maguire v. Hughes Aircraft Corp.*, 912 F.2d 67, 70 (3d Cir. 1990) (If "a significant conflict is found to exist" between state tort law and federal interests, "state tort law is pre-empted and the government contractor defense as defined by federal law will apply."). The court hearing this case thus may have to determine whether Illinois' joint-and-several liability regime conflicts with the federal interests that the government contractor defense protects.

A federal court should be the one to resolve that question. As discussed above, Congress decided "as a policy matter . . . that [a] federal defense

should be decided in federal court" when it is asserted by a defendant who acted under a federal officer. *Hammer v. HHS*, 905 F.3d 517, 532-33 (7th Cir. 2018). That policy "should not be frustrated by a narrow, grudging interpretation" of federal officer removal. *Willingham*, 395 U.S. at 407. Allowing such an interpretation would undermine the "basic purpose" of the federal officer removal statute to "protect the Federal Government from the interference with its operations that would ensue were a State able" to sue a federal officer in "State court for an alleged" violation of state law. *Watson*, 551 U.S. at 150.

Those concerns are equally implicated when a private contractor "acts as an assistant to a federal official in helping that official" carry out federal operations. *Watson*, 551 U.S. at 151. That is so even when the federal defense applies only to a portion of the liability at issue. *See, e.g.*, *Cnty. Bd. of Arlington Cnty., Va. v. Express Scripts Pharm., Inc.*, 996 F.3d 243, 252 n.8 (4th Cir. 2021) (upholding federal officer removal where defendant performed 8% of the alleged conduct under a federal officer). Thus, if Illinois seeks to hold 3M liable for the entire cost of remediating alleged PFAS contamination of the Mississippi River System or another natural resource where PFAS from non-AFFF and MilSpec AFFF sources are commingled and indistinguishable, as the State has said it will do, then a federal court should decide whether applying Illinois' joint-and-several liability scheme

36

would create a significant conflict with the federal interests animating the government contractor defense.

3. Even if the district court were correct that the factfinder will be able to distinguish between and among PFAS sources, 3M would still raise its federal government contractor defense.

Under Illinois law, a plaintiff may try to hold the defendant liable for all damages if that defendant definitively caused any of the damages. The general rule in Illinois is that a defendant is liable only for its own conduct if the factfinder determines that less than 25% of the total fault is attributable to the defendant. *See* Ill. Rev. Stat. § 2-1117. But under certain circumstances in environmental pollution cases, a defendant liable for any share of the total fault may be held jointly and severally liable for all damages. *Id.* § 2-1118.

Again, even though the complaint defines PFAS not to "include any PFAS . . . from . . . AFFF," A52 ¶ 11, Illinois has expressly stated that it will pursue joint-and-several liability against 3M in this case. A218 at n.4. It therefore was incorrect for the district court to conclude that 3M simply "could point to another private company releasing PFAS into the Mississippi River from another facility as an alternate source of the contamination and be released from liability for that contamination." A12. If the factfinder

determines that a portion of the PFAS contamination of the Mississippi River System or other natural resources came from the Cordova facility, Illinois will try to hold 3M jointly and severally liable—even if some of the contamination also came from MilSpec AFFF used at the Rock Island Arsenal or other sources.

If Illinois pursues that approach, 3M would be entitled to assert its government contractor defense in response. For the same reasons described above (at 34-36), 3M is entitled to have a federal court determine whether the government contractor defense would preempt Illinois' joint-and-several liability regime in the circumstances of this case. Illinois' disclaimer thus does nothing to foreclose 3M from raising the federal government contractor defense.

### 3. Adopting The District Court's Construction Of The Federal Officer Removal Statute Would Result In Duplicative Litigation.

The district court's interpretation of the federal officer removal statute would allow Illinois to eliminate federal officer jurisdiction by dividing its damages to the same natural resources by PFAS source. But courts generally should avoid constructions that "would give rise to wasteful, duplicative litigation" in state and federal courts. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 86 (2006). Further, the district court's in-

terpretation would invite plaintiffs to try to take multiple bites of the damages apple by pursuing joint-and-several liability with respect to the same PFAS contamination in several lawsuits. Plaintiffs thus would have an incentive to depart from the normal practice of asserting all of their damages in a single suit—a practice that other State plaintiffs in PFAS suits (including in this Circuit) have observed. *See, e.g.*, Complaint, Wisconsin v. 3M Co., No. 23-cv-28 (D.S.C. July 27, 2022), ECF No. 1-1; Complaint, Puerto Rico v. 3M Co., No. 3:23-cv-1281 (D.P.R. May 31, 2023), ECF No. 1; Complaint, Rhode Island v. 3M Co., PC-2023-02452 (R.I. Super. Ct. May 25, 2023); Notice of Removal, California v. 3M Co., No. 4:22-cv-9001 (N.D. Cal. Dec. 20, 2022), ECF No. 1.

Instead, plaintiffs would follow Illinois' lead by filing multiple suits raising the same legal and factual issues about the same locations. The result would be a proliferation of parallel state and federal cases that duplicate discovery and force companies to simultaneously defend identical claims in multiple forums. And unlike duplicative claims in federal courts (which can be consolidated, even if filed in different parts of the country, *see* 28 U.S.C. § 1407(a); Fed. R. Civ. P. 42(a)), duplicative claims pending in state and federal courts cannot be consolidated, so the parties would incur duplicative costs litigating the same case before different courts. It also raises the specter of inconsistent decisions concerning claims relating to the same natural resources. The Court should not countenance a narrow and

unfounded interpretation of the federal officer removal statute that saddles parties and courts with redundant litigation.

## CONCLUSION

The Court should reverse and remand with instructions that the district court recall its remand to the state court.

Dated: January 12, 2024                    Respectfully submitted,

/s/ *Michael A. Scodro*

Michael A. Scodro
Avi M. Kupfer
Gary A. Isaac
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
mscodro@mayerbrown.com


*Counsel for Appellant 3M Company*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), undersigned counsel certifies that this brief:

(i)    complies with the type-volume limitation of Rule 27(d)(2)(A) because it contains 8,924 words; and

(ii)    complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Office Word 2016 and is set in Century Schoolbook font in a size equivalent to 14 points or larger.

*/s/ Michael A. Scodro*
Michael A. Scodro

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system on January 12, 2024. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Michael A. Scodro*
Michael A. Scodro

**ADDENDUM**

## ADDENDUM TABLE OF CONTENTS

28 U.S.C. § 1442 ........................................................................Add. 1

28 U.S.C. § 1442 provides:

## Federal officers or agencies sued or prosecuted

(a)  A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1)  The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

(2)  A property holder whose title is derived from any such officer, where such action or prosecution affects the validity of any law of the United States.

(3)  Any officer of the courts of the United States, for or relating to any act under color of office or in the performance of his duties;

(4)  Any officer of either House of Congress, for or relating to any act in the discharge of his official duty under an order of such House.

(b)  A personal action commenced in any State court by an alien against any citizen of a State who is, or at the time the alleged action accrued was, a civil officer of the United States and is a nonresident of such State, wherein jurisdiction is obtained by the State court by personal service of process, may be removed by the defendant to the district court of the United States for the district and division in which the defendant was served with process.

(c)  Solely for purposes of determining the propriety of removal under subsection (a), a law enforcement officer, who is the defendant in a criminal prosecution, shall be deemed to have been acting under the color of his office if the officer—

(1)  protected an individual in the presence of the officer from a crime of violence;

**Add. 1**

(2)   provided immediate assistance to an individual who suffered, or who was threatened with, bodily harm; or

(3)   prevented the escape of any individual who the officer reasonably believed to have committed, or was about to commit, in the presence of the officer, a crime of violence that resulted in, or was likely to result in, death or serious bodily injury.

(d)   In this section, the following definitions apply:

(1)   The terms "civil action" and "criminal prosecution" include any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents, is sought or issued. If removal is sought for a proceeding described in the previous sentence, and there is no other basis for removal, only that proceeding may be removed to the district court.

(2)   The term "crime of violence" has the meaning given that term in section 16 of title 18.

(3)   The term "law enforcement officer" means any employee described in subparagraph (A), (B), or (C) of section 8401(17) of title 5 and any special agent in the Diplomatic Security Service of the Department of State.

(4)   The term "serious bodily injury" has the meaning given that term in section 1365 of title 18.

(5)   The term "State" includes the District of Columbia, United States territories and insular possessions, and Indian country (as defined in section 1151 of title 18).

(6)   The term "State court" includes the Superior Court of the District of Columbia, a court of a United States territory or insular possession, and a tribal court.

**SHORT APPENDIX**

## CIRCUIT RULE 30(d) CERTIFICATION

All of the materials required by Seventh Circuit Rule 30(a) are in-cluded in this appendix bound with the appellant's brief. All of the materials required by Seventh Circuit Rule 30(b) are included in the separately bound appendix.

/s/ *Michael A. Scodro*
Michael A. Scodro

# APPENDIX TABLE OF CONTENTS

*Short Appendix*

Remand Order (ECF No. 23) ........................................................... A1

*Appendix*

Docket, *People of the State of Illinois ex rel. Kwame Raoul v. 3M
   Co.*, 22-cv-04075 (C.D. Ill.) ....................................................... A15

Notice of Removal (ECF No. 1) .................................................... A20

Plaintiff's Motion to Remand (ECF No. 3) ............................... A203

Plaintiff's Brief in Support of Motion to Remand (ECF No. 4) ............. A207

Notice of Appeal (ECF No. 24) ................................................... A227

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| *ex. rel*. KWAME RAOUL, Attorney General | ) | |
| of the State of Illinois, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:22-cv-04075-SLD-JEH |
| | ) | |
| 3M COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

Before the Court is Plaintiff People of the State of Illinois, *ex. rel*. Kwame Raoul,

Attorney General of the State of Illinois's Motion to Remand, ECF No. 3.  For the following

reasons, the motion is GRANTED.

**BACKGROUND**

On March 16, 2022, Plaintiff filed a complaint in Illinois state court against Defendant

3M Company.  Compl., ECF No. 1-1 at 5–69.  According to the complaint, Defendant is a

manufacturing company which operates throughout the United States.  *Id*. at 10.  Since the

1970s, it has operated a manufacturing facility on the banks of the Mississippi River in Cordova,

Illinois (the "Cordova Facility").  *Id*.  Defendant produces numerous chemical products at this

facility, some of which contain perfluoroalkyl and polyfluoroalkyl substances ("PFAS").  *Id*. at

11–12.

PFAS are toxic chemicals that are harmful to public health, safety, and welfare, as well as

to the environment.  *Id*. at 3.  The United States Environmental Protection Agency ("US EPA")

has established a lifetime health advisory level for certain PFAS compounds.  *Id*. at 12.  The

Illinois Environmental Protection Agency ("Illinois EPA") has also established health advisories

containing health-based guidance levels for several PFAS.  *Id*.  Defendant "has detected PFAS in
wastewater at, from, and around the Cordova Facility at levels injurious to public health and
welfare and to the environment."  *Id*.  These levels are "thousands of times higher" than the
levels established by the US EPA and the Illinois EPA.  *Id*. at 13.  The US EPA has also detected
levels of PFAS in wastewater from the Cordova Facility that exceed its and the Illinois EPA's
established levels.  *Id*.

Plaintiff claims that "[o]n information and belief, [Defendant] manufactured and disposed
of PFAS and/or PFAS-containing products at the Cordova Facility in a manner that caused PFAS
to be released into Illinois' environment."  *Id*. at 12.  Explicitly excluded from the definition of
PFAS as used in the complaint are "any PFAS that have contaminated Illinois' environment or
natural resources from aqueous film-forming foams ("AFFF") containing . . . PFAS
compound[s]."  *Id*. at 8.  Plaintiff alleges that Defendant "negligently operated [the] Cordova
Facility such that it allowed the discharge, emission, placement, disposal, leakage, spillage,
and/or abandonment of PFAS" and that, despite knowing that PFAS are toxic and pose
substantial risks to health and the environment, it "persistently and intentionally hid this
information from Illinois and the public."  *Id*. at 19.  Plaintiff brings claims for violation of the
Illinois Environmental Protection Act, 415 ILCS 5/1–5/58.17 (Counts I, II, III, IV, and V);
violation of the Illinois Fish and Aquatic Life Code, 515 ILCS 5/1-1–5/50-1, and Wildlife Code,
520 ILCS 5/1.1–5/4.4 (Count VI); negligence (Count VII); trespass (Count VIII); common law
public nuisance (Count IX); and common law prohibition on unjust enrichment (Count X).
Compl. 38–60.  It seeks compensatory damages for the PFAS contamination and the costs of
remediation; injunctive relief to address past, present, and future PFAS contamination; and
statutory penalties, as well as attorney's fees, costs, and prejudgment interest.  *Id*. at 61–63.

On April 21, 2022, Defendant removed this action to the Central District of Illinois.  Not.
Removal, ECF No. 1.  It cites the federal officer removal statute, 28 U.S.C. § 1442(a)(1), as the
basis for federal jurisdiction.  *Id*. at 3.  As the suit "seeks damages for all Illinois natural
resources allegedly contaminated with PFAS from the Cordova Facility—including downstream
areas of the Mississippi River," Defendant argues that the alleged contamination for which
Plaintiff alleges Defendant is responsible "plausibly may encompass and overlap with PFAS
contamination" from other sources, specifically, the use, storage, and/or disposal of AFFF
("MilSpec AFFF") by the U.S. Military at the Rock Island Arsenal, twenty-five miles
downstream from the Cordova Facility.  *Id*. at 2.  Defendant states that because it developed and
sold MilSpec to the U.S. Military, some of which was stored and used at the Rock Island
Arsenal, it intends to assert the federal government contractor defense, entitling it to a federal
forum.  *Id*. at 2, 8, 14.

Plaintiff now moves to remand this case back to state court, arguing that the federal
officer removal statute is not a basis for removal because Plaintiff does not seek to hold
Defendant liable for contamination from any MilSpec AFFF released from the Rock Island
Arsenal but rather only for PFAS discharged specifically from the Cordova Facility.  Mem.
Supp. Mot. Remand 1–2, ECF No. 4.

## DISCUSSION

### I.     Removal

#### A. Legal Standard

"The federal officer removal statute permits a defendant to remove to federal court a
state-court action brought against the 'United States or any agency thereof or any officer (or any
person acting under that officer) of the United States or of any agency thereof, sued in an official

or individual capacity for any act under color of such office.'" *Watson v. Philip Morris Cos.*, 551 U.S. 142, 145 (2007) (emphasis omitted) (quoting 28 U.S.C. § 1442(a)(1)).  A plaintiff may move to remand the case to state court for lack of subject matter jurisdiction at any time before final judgment.  28 U.S.C. § 1447(c).  "The party seeking removal bears the burden of proving the grounds for its motion."  *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1180 (7th Cir. 2012).

A defendant need not submit evidence in support of its notice of removal under the federal officer removal statute.  *Betzner v. Boeing Co.*, 910 F.3d 1010, 1016 (7th Cir. 2018). Rather, "[j]urisdictional allegations control unless it is legally impossible for them to be true." *Id.* at 1014 (alteration in original) (quotation marks omitted).  Courts will review "allegations in support of removal under the federal pleading standards, asking whether they are facially plausible."  *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 941 (7th Cir. 2020).

## B.  Analysis

The central purpose of the federal officer removal statute is to protect the federal government and its operations from potential interference by the states through proceedings in state court.  *Watson*, 551 U.S. at 150.  Because such proceedings "may reflect local prejudice against unpopular federal laws or federal officials" and may deprive federal officials of a federal forum in which to assert federal immunity defenses, it is important for a federal forum to be available.  *Id.* (quotation marks omitted).  The same considerations apply to a private person who acts with or for federal officers or agents in executing duties under federal law.  *Id.* at 151.

For a defendant to remove a case pursuant to the statute, it "must show it was a (1) 'person' (2) 'acting under' the United States, its agencies, or its officers (3) that has been sued 'for or relating to any act under color of such office,' and (4) has a colorable federal defense to the plaintiff's claim."  *Ruppel*, 701 F.3d at 1180–81 (quoting 28 U.S.C. § 1442(a)).  The statute

4

A4

thus operates as an exception to the well-pleaded complaint rule: whereas an action may generally only be removed to federal court under federal question jurisdiction if "the federal question . . . appear[s] on the face of [the] properly pleaded complaint," under the federal officer removal statute, "the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 430–31 (1999).  At this stage, the court will credit the removing party's theory of the case, even if both sides "have reasonable theories."  *See Baker*, 962 F.3d at 947.  The concern is "with who makes the ultimate determination, not what that determination will be."  *Id*. (quotation marks omitted).  The Supreme Court "has made clear that courts must liberally construe" the statute.  *Id*. at 941 (quotation marks omitted); *see also Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) (noting that "the policy favoring removal [under the federal officer removal statute] should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)" (quotation marks omitted)); *Ruppel*, 701 F.3d at 1180 ("[T]he federal officer removal statute is not narrow or limited." (quotation marks omitted)).

The Court will examine whether Defendant has satisfied each requirement of the statute.

### i.    Person Within Meaning of Statute

Corporations are persons for purposes of the federal officer removal statute.  *See Ruppel*, 701 F.3d at 1181.  Defendant states that it is a corporation, Not. Removal 11; *see also* Compl. 10 (alleging that Defendant is a corporation), so the person requirement is satisfied.

### ii.    Acting Under the United States

Courts consider government contractors to be "acting under" the United States, its agencies, or its officers when they "assist, or . . . help carry out, the duties or tasks of the federal superior," *Watson*, 551 U.S. at 152 (emphases omitted), such as "help[ing] the [g]overnment to produce an item that it needs," *Baker*, 962 F.3d at 942 (quotation marks omitted); *see, e.g.*,

5

A5

*Betzner*, 910 F.3d at 1015 (finding that the defendant "plausibly alleged that it acted under federal officers when it contracted to manufacture heavy bomber aircraft for the United States Air Force, and that it acted under the military's detailed and ongoing control"). "Acting under" may include situations in which a defendant "work[s] hand-in-hand with the federal government to achieve a task that furthers an end of the federal government" or in which "the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete." *Ruppel*, 701 F.3d at 1181. However, mere compliance with the law—even where compliance is overseen by the government—is not sufficient. *Watson*, 551 U.S. at 152.

In the notice of removal, Defendant alleges that for over three decades, it manufactured MilSpec AFFF for sale to the U.S. military. Not. Removal 8. It notes that "MilSpec AFFF is a mission critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself" and that "the military has long depended upon outside contractors like [Defendant] to manufacture and supply AFFF." *Id*. at 12. Moreover, it asserts, "[i]n designing, manufacturing and supplying MilSpec AFFF products, [Defendant] acted . . . in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling." *Id*. at 13. Because Defendant has thus plausibly alleged that it assisted the federal government in producing a necessary item under the military's observation and control, a task the government would otherwise have had to use its own agents to complete, it has satisfied the "acting under" requirement of the federal officer removal statute. *See Nessel v. Chemguard, Inc*., No. 1:20-cv-1080, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021) (finding that the defendants, private contractors, were "acting under" a federal officer by producing

MilSpec AFFF because that "is a product that the [g]overnment would have had to create if [the] [d]efendants did not exist").

### iii. Colorable Federal Defense

A defendant must also allege a "colorable or plausible federal defense." *See Hammer v. U.S. Dep't of Health & Hum. Servs.*, 905 F.3d 517, 528 (7th Cir. 2018) (quotation marks omitted). Defendant has stated it intends to assert the federal government contractor defense as to MilSpec AFFF. *See* Not. Removal 15. This defense "immunizes government contractors from state tort law when the government had a hand in a defendant's allegedly defective design." *Ruppel*, 701 F.3d at 1183. It "applies where (1) the federal government approved reasonably precise specifications, (2) the manufactured equipment conformed to the government's specifications, and (3) the contractor warned the federal government about the equipment's dangers that were unknown to the government." *Betzner*, 910 F.3d at 1016 (citing *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988)). The defense need only be "colorable," not "clearly sustainable." *Ruppel*, 701 F.3d at 1182 (quotation marks omitted).

Defendant states that the U.S. government has approved rigorous specifications for the manufacture and sale of MilSpec AFFF, which were created and administered by Naval Sea Systems Command, namely, that,

> [a]ll MilSpec AFFF products must be qualified for listing on the applicable Qualified Products List prior to military procurement. Prior to such listing, a manufacturer's products are examined, tested, and approved to be in conformance with specification requirements. . . . After a product is added to the Qualified Products List, [c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status.

Not. Removal 7 (third alteration in original) (footnote omitted) (quotation marks omitted). It notes that "the current MilSpec expressly contemplates that AFFF formulations will contain [PFAS compounds]." *Id*. at 8. Defendant further alleges that the MilSpec AFFF it manufactured

conformed to the government's specifications. *See id*. at 16 ("[Defendant's] products appeared on the DOD Qualified Products List, which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec [specifications].").  And it claims that "the government was adequately informed regarding alleged product-related dangers" of MilSpec AFFF through "testing protocols and requirements for toxicity, chemical oxygen, and biological demand." *Id*. at 17 (quotation marks omitted) ("[I]t is clear that the United States has long understood that AFFF contain PFAS and may contain or break down into [PFAS compounds]; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise environmental or health issues."). Defendant points to government reports from 1980 and 2017 discussing the adverse environmental effects of AFFF to illustrate that the government was aware of the dangers of AFFF. *Id*. at 17–18; *see, e.g.*, *Betzner*, 910 F.3d at 1015–16 (finding that the defendant had adequately alleged the federal government contractor defense where it alleged that "the federal government was independently aware of the potential health hazards related to" the acts alleged in the complaint).

For damages related to MilSpec AFFF, Defendant has plausibly alleged each of the three elements of the federal government contractor defense, showing a colorable federal defense.

### iv.  Under Color of Federal Authority

The outcome of Plaintiff's motion to remand thus hinges on the "under color of federal authority" requirement.  That a defendant acted generally under a federal directive and would have a colorable defense for those actions is not sufficient to remove a case; the actions under federal directive must relate to the claims brought in the suit.  *See Baker*, 962 F.3d at 943; *see Ruppel*, 701 F.3d at 1181 (noting that the "under color of federal authority" requirement "is

distinct from the 'acting under' requirement in the same way a bona fide federal officer could not remove a trespass suit that occurred while he was taking out the garbage"). To satisfy this requirement, a defendant must plausibly allege that the action is "connected or associated[] with acts under color of federal office." *Baker*, 962 F.3d at 943–44 (emphases omitted) (quotation marks omitted) (noting that this requirement is more inclusive than the previous requirement that there be a "causal connection" between the suit and acts done under governmental authority).

A removing defendant need not claim that the alleged harm arose entirely from acts done under federal authority; all that is needed is an allegation that "at least some of the [alleged harm] arose from the federal acts." *Id.* at 945; *see also id.* ("[R]emoval need not be justified as to all claims asserted in the plaintiffs' complaint; rather, the defense need only apply to one claim to remove the case." (quotation marks omitted)). Nor must the defendant prove conclusively that such a connection or association exists; provided that the allegations are sufficient, "whether the challenged act was outside the scope of [the] [d]efendants' official duties, or whether it was specifically directed by the federal [g]overnment, is [a question] for the federal—not state—courts to answer." *Id.* (quotation marks omitted); *see Acker*, 527 U.S. at 432 (finding that "demanding an airtight case on the merits in order to show the required . . . connection" would "defeat the purpose of the removal statute").

In the complaint, Plaintiff seeks to recover for PFAS contamination to Illinois' environment and natural resources, including to the Mississippi River, caused by Defendant. *See* Compl. 1, 38–45, 51–54, 57–58. Defendant now alleges that this suit is connected to the MilSpec AFFF it manufactured for the U.S. military and which was stored at the Rock Island Arsenal—despite Plaintiff's explicit exemption of AFFF from the suit, *id.* at 8—because the alleged contamination to the Mississippi River for which Plaintiff is seeking damages "plausibly

may encompass and overlap with PFAS contamination from the use, storage, and discharge of MilSpec AFFF at the Rock Island Arsenal."  Not. Removal 2.  Thus, Defendant argues, this suit is connected or associated with its actions as a federal contractor.  Plaintiff counters that the supposed release of MilSpec AFFF from the Rock Island Arsenal "has nothing to do with a single allegation" in its complaint, as it "seek[s] relief exclusively" for non-AFFF PFAS contamination from Defendant's Cordova Facility.  Mem. Supp. Mot. Remand 1–2 ("This case only concerns [Defendant's] release of pollutants from a specific . . . facility . . . .").

"[C]ourts have consistently granted motions to remand where the plaintiff expressly disclaimed the claims upon which federal officer removal was based."  *Reinbold v. Advanced Auto Parts, Inc*., Case No. 18-CV-605-SMY-DGW, 2018 WL 3036026, at *2 (S.D. Ill. June 19, 2018) (collecting cases finding remand appropriate because the plaintiff expressly disclaimed claims for asbestos exposure from military or other federal government locations).  By renouncing all claims stemming from a contractor's work for the federal government, it no longer becomes necessary to assert the federal government contractor defense.  Plaintiff only seeks relief for PFAS contamination from the Cordova Facility, not for PFAS contamination from other locations.  *See* Compl. 1.  It expressly defines PFAS as non-AFFF PFAS, *id*. at 8, and Defendant does not assert in its notice of removal that it produced MilSpec AFFF at the Cordova Facility.  *See* Mem. Supp. Mot. Remand 3 ("[Defendant] does not contend that it produced or used MilSpec AFFF at its Cordova Facility." (emphasis omitted)).  This indicates that Plaintiff has expressly disclaimed claims for PFAS contamination stemming from anywhere other than the Cordova Facility—including the Rock Island Arsenal—and Defendant cannot be held liable for PFAS contamination from anywhere other than the Cordova Facility.

10

A10

Defendant points to *Nessel* in support of its argument that it is entitled to raise "the

production of MilSpec AFFF as a defense or an alternate theory' of causation" and then assert

the federal government contractor defense as to contamination resulting from MilSpec AFFF.

*See* Not. Removal 2 (quoting *Nessel*, 2021 WL 744683, at *3).  The complaint in *Nessel* was

brought to remedy contamination from commercially available AFFF only; a separate case

against the same defendants involved MilSpec AFFF.  *Nessel*, 2021 WL 744683, at *1.  The

defendants removed the suit to federal court, arguing that the injuries from commercially

available AFFF and MilSpec were "indivisible," and so they intended to assert the federal

government contractor defense.  *Id*.  The court found that removal was proper because the

plaintiffs had failed to show that the injuries from the two sources would be "distinguishable"

and that "[i]t [wa]s entirely possible that [the] [p]laintiffs' injuries occurred from actions taken

while [the] [d]efendants were acting under color of federal office: namely, MilSpec AFFF."  *Id*.

at *3.  It disregarded the plaintiffs' argument that they did not seek resolution of any claims

related to MilSpec AFFF because they could not "decide what defense [the] [d]efendants might

present."  *Id*.  The court elaborated:

> Consider, for example, a tort case: a plaintiff can allege that a defendant and only
> that defendant caused his injury, but a plaintiff cannot prevent a defendant from
> presenting an alternate theory of causation.  Thus, while [the] [p]laintiffs attempt
> to surgically divide their complaints between [c]ommercial and MilSpec AFFF,
> they cannot prevent [the] [d]efendants from raising the production of MilSpec
> AFFF as a defense or an alternate theory, particularly when [the] [p]laintiffs admit
> that [the] [d]efendants produced MilSpec AFFF and that PFAS from AFFF spread
> contamination throughout the state.

*Id*. (emphases omitted).

This Court does not disagree that Defendant could point to PFAS contamination from the

use and storage of MilSpec AFFF at the Rock Island Arsenal as an alternate source of the

contamination that is the basis of this suit.  But even without asserting the federal government

contractor defense as to that source of contamination, Defendant cannot be held liable for contamination from the Rock Island Arsenal.  In other words, once Defendant shows that a certain portion of the contamination stemmed from MilSpec AFFF released from the Rock Island Arsenal, that contamination is eliminated from the case, whether or not that MilSpec AFFF was produced according to rigorous military specifications and the government was warned of any dangers of which it was unaware.  *See supra* Section I(B)(iii); *see also New Hampshire v. 3M Co.*, Civil No. 22-cv-145-LM, 2023 WL 2691376, at *8 (D.N.H. Mar. 29, 2023) (finding that the court lacked removal jurisdiction under the federal officer removal statute in a suit brought for PFAS contamination where the plaintiff had "consistently disclaimed any recovery for contamination resulting from [the defendant's] production of AFFF" because the disclaimer eliminated the connection between the claims and the defendant's production of MilSpec AFFF for the U.S. military).  Likewise, Defendant could point to another private company releasing PFAS into the Mississippi River from another facility as an alternate source of the contamination and be released from liability for that contamination, regardless of that company's status as a federal contractor.

Permitting Defendant to remove this suit under the federal officer removal statute when the federal government contractor defense is irrelevant to the eventual resolution of the case and any PFAS it produced as a military contractor is explicitly excluded from this suit would defeat the purpose of the statute.  It is thus impossible for Defendant to be held liable for damages stemming from its actions under federal authority, and so the requisite connection or association is missing.  Because the "under color of federal authority" requirement has not been met, federal jurisdiction is not proper.  Plaintiff's motion to remand this case to state court is granted.

## II.    Attorney's Fees

In the event that the Court granted its motion to remand, Plaintiff requests that Defendant be ordered to pay the attorney's fees Plaintiff incurred as a result of the removal.  Mem. Supp. Mot. Remand 16.  28 U.S.C. § 1447(c) permits an award of attorney's fees upon remand.  The Supreme Court has held that there is no strong presumption in favor of a fee award.  *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 137 (2005).  "[C]ourts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal."  *Id.* at 141.  "Conversely, when an objectively reasonable basis exists, fees should be denied."  *Id.*  "[D]istrict courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case."  *Id.*

The Court declines to use its discretion to order an award of fees in Plaintiff's favor.  Unlike removal under 28 U.S.C. § 1441, which "should be construed narrowly and against removal," *People of State of Ill. v. Kerr-McGee Chem. Corp.*, 677 F.2d 571, 576 (7th Cir. 1982), the Supreme Court has made clear that "the policy favoring removal [under § 1442(a)(1)] should not be frustrated by a narrow, grudging interpretation of" the statute, *Manypenny*, 451 U.S. at 242 (quotation marks omitted).  Moreover, it appears that Defendant has successfully removed cases involving PFAS and/or AFFF under the federal officer removal statute on a number of other occasions.  *See, e.g.*, Not. Removal 6 (collecting cases); Mem. Supp. Mot. Remand 1–2 n.1 (same).  Plaintiff's request for attorney's fees is therefore denied.

## CONCLUSION

For the foregoing reasons, Plaintiff People of the State of Illinois, *ex. rel.* Kwame Raoul, Attorney General of the State of Illinois's Motion to Remand, ECF No. 3, is GRANTED.  This

suit is remanded back to the Circuit Court of the Fourteenth Judicial Circuit, Rock Island

County.

Entered this 21st day of September, 2023.

s/ Sara Darrow
_____
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE

14

A14