No. 23-3031

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, *ex rel.* KWAME RAOUL, Attorney General of the State of Illinois, | ) ) ) ) | Appeal from the United States District Court for the Central District of Illinois |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 4:22-cv-4075-SLD-JEH |
| 3M COMPANY, | ) ) | The Honorable SARA DARROW, |
| Defendant-Appellant. | ) | Chief Judge Presiding. |

## BRIEF OF PLAINTIFF-APPELLEE

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3000

Attorneys for Plaintiff-Appellee

**LEIGH J. JAHNIG**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 793-1473 (office)
(773) 590-7877 (cell)
Leigh.Jahnig@ilag.gov

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ................................................................................. ii

JURISDICTIONAL STATEMENT ................................................................... 1

ISSUES PRESENTED FOR REVIEW ............................................................ 2

STATEMENT OF THE CASE ........................................................................... 3

SUMMARY OF ARGUMENT .......................................................................... 11

ARGUMENT ....................................................................................................... 12

I. This court reviews *de novo* the district court's remand order, and credits allegations in a notice of removal that are plausible, not speculative or conclusory ............................................................................................. 12

II. Remand to state court was correct because the district court lacked federal officer jurisdiction over this action ................................................... 13

 A. The district court correctly held that this action was not for or relating to 3M's alleged acts under color of federal office. ..................................... 14

  1. The State's choice to limit this action to non-AFFF contamination caused by the Cordova facility was valid. ............ 16

  2. *Baker* does not compel reversal ....................................................... 22

  3. The district court applied the correct legal standard. ................... 28

  4. 3M's claimed government contractor defense does not apply and does not connect its federal activities to the State's claim. ......... 30

 B. Alternatively, 3M does not have a colorable federal defense to the State's claim. ............................................................................................. 32

 C. 3M's policy arguments are flawed and irrelevant. .................................. 34

CONCLUSION ..................................................................................................... 37

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

## TABLE OF AUTHORITIES

**Cases**

*Page(s)*

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................... 13, 36

*Baker v. Atl. Richfield Co.,*
    962 F.3d 937 (7th Cir. 2020) .......................................................... *passim*

*Batchelor v. Am. Optical Corp.,*
    185 F. Supp. 3d 1358 (S.D. Fla. 2016) .................................... 21, 23, 32

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................. 13

*Betzner v. Boeing Co.,*
    910 F.3d 1010 (7th Cir. 2018) .......................................... 12, 13, 14, 15

*Caterpillar Inc. v. Williams,*
    482 U.S. 386 (1987) ...................................................................... 16, 35

*City & Cnty. of Honolulu v. Sunoco LP,*
    39 F.4th 1101 (9th Cir. 2022) ............................................................. 13

*City of Hoboken v. Chevron Corp.,*
    45 F.4th 699 (3d Cir. 2022) ........................................... 16-17, 25, 30-31

*Curiale v. A Clemente, Inc.,*
    No. 1:23-cv-00187, 2023 WL 4362722 (D.N.J. July 5, 2023) ............. 27

*DeFiore v. SOC LLC,*
    85 F.4th 546 (9th Cir. 2023) ............................................................... 28

*Delaware v. BP Am. Inc.,*
    578 F. Supp. 3d 618 (D. Del. 2022) .................................................... 22

*District of Columbia v. Exxon Mobil Corp.,*
    89 F.4th 144 (D.C. Cir. 2023) ............................................................ 17

*Gov't of Puerto Rico, v. Eli Lilly & Co.,*
    No. CV 23-1127 (JAG), 2023 WL 4830569 (D.P.R. July 13, 2023) ........ 17, 32, 36

*Grosch v. Tyco Fire Prod. LP,*
    No. CV-23-01259, 2023 WL 5993548 (D. Ariz. Sept. 15, 2023) ............ 18, 27

*Hayden v. 3M,*
    No. 15-cv-2275, 2015 WL 4730741 (E.D. La. Aug. 10, 2015) ............ 18, 32

*In re Aqueous Film-Forming Foams Prod. Liab. Litig.*,
357 F. Supp. 3d 1391 (J.P.M.L. 2018) ................................................ 35

*In re Katrina Canal Breaches Litig.*,
620 F.3d 455 (5th Cir. 2010) ............................................................... 33

*Jefferson Cnty. v. Acker*,
527 U.S. 423 (1999) ............................................................... 12, 15, 16

*Karmon v. Cal. Inst. of Tech.*,
No. 2:21-cv-08910, 2022 WL 102206 (C.D. Cal. Jan. 10, 2022) ........................ 21

*Kelleher v. A.W. Chesterton Co.*,
No. 15-CV-893-SMY-SCW, 2015 WL 7422756 (S.D. Ill. Nov. 23, 2015) ...... 18, 32

*Kowalski v. Boliker*,
893 F.3d 987 (7th Cir. 2018) .......................................................... 12, 33

*LG Display Co. v. Madigan*,
665 F.3d 768 (7th Cir. 2011) ............................................................... 36

*Maine v. 3M Co.*,
No. 2:23-CV-00210-JAW, 2023 WL 4758816 (D. Me. July 26, 2023) ......... *passim*

*Nessel v. Chemguard, Inc.*,
No. 1:20-CV-1080, 2021 WL 744683 (W.D. Mich. Jan. 6, 2021) ................. 25, 26

*New Hampshire v. 3M Co.*,
665 F. Supp. 3d 215 (D.N.H. 2023) ............................................... *passim*

*O'Callaghan v. United States*,
686 F. Supp. 2d 826 (N.D. Ill. 2010) .................................................... 23

*Ohio ex rel. Yost v. Ascent Health Servs. LLC*,
No. 2:23-CV-1450, 2024 WL 23187 (S.D. Ohio Jan. 2, 2024) ....................... 31-32

*People of the State of Cal. v. Eli Lilly & Co.*,
No. 2:23-CV-01929-SPG-SK, 2023 WL 4269750 (C.D. Cal. June 28, 2023) ...... 31

*Reinbold v. Advanced Auto Parts, Inc.*,
No. 18-CV-605, 2018 WL 3036026 (S.D. Ill. June 19, 2018) ...................... 21, 29

*Rhode Island v. Shell Oil Prod. Co.*,
979 F.3d 50 (1st Cir. 2020) ................................................................. 18

*Ruppel v. CBS Corp.*,
701 F.3d 1176 (7th Cir. 2012) ....................................................... 13, 33

*St. Charles Surgical Hosp., LLC v. La. Health Serv. & Indem. Co.*,
    990 F.3d 447 (5th Cir. 2021) ................................................. 21

*Watson v. Philip Morris Cos., Inc*,
    551 U.S. 142 (2007) ............................................................. 12

*Wood v. Crane Co.*,
    764 F.3d 316 (4th Cir. 2014) ............................................... 17

*Young v. Tyco Fire Prod., LP*,
    No. 21-15912, 2022 WL 486632 (9th Cir. Feb. 17, 2022) ............. 17, 25

## Statutes and Regulations

28 U.S.C. § 1442(a)(1) ................................................................ 1, 12

28 U.S.C. § 1447 ....................................................................... 1, 26

28 U.S.C. § 2107(a) ...................................................................... 1

735 ILCS 5/2-1118 ...................................................................... 31

Removal Clarification Act of 2011, Pub. L. 112-51, 125 Stat. 545 .............. 28

## Rules

Fed. R. App. P. 4(a)(1)(A) ............................................................... 1

## Other Authorities

Order, *South Carolina v. 3M Co.*,
    No. 2:23-cv-05979, ECF 13 (D.S.C. Feb. 29, 2024) ....................... 19, 29

## JURISDICTIONAL STATEMENT

Defendant-Appellant 3M Company's jurisdictional statement is not complete and correct. As required by 7th Cir. R. 28(b), Plaintiff-Appellee People of the State of Illinois ("State") provides this statement.

The State filed a complaint in the Circuit Court of the Fourteenth Judicial Circuit, Rock Island County, Illinois, alleging claims against 3M under Illinois law. Doc. 1-1.[1] 3M filed a notice of removal to the United States District Court for the Central District of Illinois pursuant to 28 U.S.C. §§ 1441, 1442(a)(1), and 1446. Doc. 1. 3M contended that the district court had jurisdiction based on the federal officer removal statute, 28 U.S.C. § 1442(a)(1). Doc. 1. Although the district court had authority to enter an order remanding the case to state court, *see* 28 U.S.C. § 1447(c), the district court otherwise lacked subject matter jurisdiction over the action because the action did not meet the requirements of 28 U.S.C. § 1442(a)(1).

The State moved to remand the case to state court, Docs. 3-4, which the district court granted on September 21, 2023, Doc. 23. This interlocutory order was appealable because it was "an order remanding a case to the State court from which it was removed pursuant to section 1442." 28 U.S.C. § 1447(d). 3M filed a notice of appeal on October 20, 2023, Doc. 24, which was timely under 28 U.S.C. § 2107(a) and Fed. R. App. P. 4(a)(1)(A) because it was filed within 30 days of the remand order. This court has jurisdiction over this appeal under 28 U.S.C. § 1447(d).

---

[1] The district court docket, which is the record on appeal, is cited as "Doc. __." 3M's opening brief is cited as "AT Br. __."

**ISSUES PRESENTED FOR REVIEW**

1.  Whether the district court correctly ruled that it lacked jurisdiction over this action based on the federal officer removal statute, because this action does not relate to 3M's production of aqueous film-forming foam ("AFFF") for the federal government, when the State (a) sought recovery for contamination from 3M's manufacturing facility in Cordova, Illinois, where AFFF was not produced or used, and (b) disclaimed recovery for contamination by AFFF.

2.  Alternatively, whether remand to state court was proper because 3M's alleged defense of federal contractor immunity is not plausible in this case, in which the State (a) sought recovery only for contamination caused by the Cordova facility, where 3M did not conduct activities for the federal government and (b) disclaimed recovery for contamination by the chemicals 3M produced for the federal government.

## STATEMENT OF THE CASE

**The State's complaint in state court regarding contamination at 3M's Cordova manufacturing facility**

In March 2022, the State filed a complaint against 3M in the Circuit Court of the Fourteenth Judicial Circuit, Rock Island County, Illinois. Doc. 1-1. The State sought to hold 3M liable for environmental contamination that 3M caused at its manufacturing facility in Cordova, Illinois, located on the bank of the Mississippi River. *Id.* at 5, 15-16, 40-41. The State alleged that at the Cordova facility, 3M discharged perfluoroalkyl and polyfluoroalkyl substances ("PFAS") directly into the Mississippi River and into the surrounding groundwater, drinking water, wetlands, and other parts of the environment around the facility. *Id.* at 5, 28.

PFAS are a family of synthetic chemicals containing strong carbon-fluorine bonds. *Id.* at 18. They have oil- and water-resistant properties, which reduce friction, and are found in certain consumer products, such as nonstick cookware, stain-resistant sofas and carpets, waterproof fabrics, and grease-resistant food packaging. *Id.* PFAS are colloquially known as "forever chemicals" because they persist in the environment and do not typically degrade. *See id.* at 18-19. Consequently, they build up in the environment over time, and can lead to serious harms to human health, including liver damage, decreased fertility, and thyroid disease. *Id.* at 19-20.

The State alleged that 3M's manufacturing at the Cordova facility caused PFAS to be discharged into the environment, including "directly into the Mississippi River." *Id.* at 28. For example, the complaint identified specific wells at the Cordova

facility where 3M's own testing revealed PFAS levels significantly higher than that recommended by the Illinois Environmental Protection Agency. *Id.* at 28-29. Similarly, wastewater from an outfall at Cordova that discharged directly into the Mississippi River was found to have elevated levels of PFAS, including levels "orders of magnitude" above that recommended by both the United States and Illinois EPAs for certain PFAS compounds. *Id.* at 29-30, 32-33. Based on these allegations, the State asserted state law claims under the Illinois Environmental Protection Act, the Illinois Fish and Wildlife Codes, negligence, trespass, nuisance, and unjust enrichment. *Id.* at 42-64. As remedies, the State sought (1) "monetary damages" for the cost of remedying "contamination caused by the release of PFAS from 3M's Cordova facility," (2) "injunctive relief" to remediate "resources injured or impacted by PFAS released from the Cordova facility," and (3) civil penalties for the contamination caused by the Cordova facility. *See id.* at 17.

Throughout the complaint, the State emphasized that this action sought to remedy contamination specifically from the Cordova facility. *E.g., id.* at 5 (seeking relief for "contamination caused by the release of PFAS from 3M's Cordova facility" and damage to the environment "because of the resulting contamination"); *id.* at 40-41 (same); *id.* at 15 (claim arises from "activities that occurred at the Cordova Facility"). Similarly, the factual allegations recounted only contamination from Cordova. *See id.* at 28-42. And the State further clarified that the contamination for which it sought recovery did "*not* include" contamination from "aqueous film-forming foams ('AFFF') containing PFOA, PFOS, or any other PFAS compound." *Id.*

at 12 (emphasis in original).  AFFF is a fire-fighting foam, used to extinguish liquid fuel fires, that contains certain types of PFAS compounds.  *See In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, 357 F. Supp. 3d 1391, 1392 (J.P.M.L. 2018).[2]

**3M's notice of removal**

3M removed this action to the United States District Court for the Central District of Illinois, claiming jurisdiction under the federal officer removal statute. Doc. 1.  That statute permits a person "acting under" a United States officer to remove to federal court a civil action "for or relating to any act under color of such office."  28 U.S.C. § 1442(a)(1).  To remove an action under this statute, a defendant must also raise a "colorable federal defense."  *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999).

3M alleged that it could invoke federal officer jurisdiction because it had produced military-specification AFFF ("MilSpec AFFF") for the United States military as a contractor.  Doc. 1 at 6-8, 13.  3M also claimed that the military had used MilSpec AFFF at the Rock Island Arsenal, located 25 miles downriver from the Cordova facility.  *Id.* at 2, 9-10.  3M averred that it would assert the government contractor defense "[t]o the extent that the State's alleged damages arise from MilSpec AFFF."  *Id.* at 2.  That defense, 3M alleged, rendered 3M immune from liability for its MilSpec AFFF production.  *Id.* at 16-19.

---

[2] *See also Per- and Polyfluoroalkyl Substances (PFAS)*, Ill. Env't Prot. Agency, https://epa.illinois.gov/topics/water-quality/pfas.html (last visited Mar. 12, 2024).  The court may take judicial notice of information on government websites.  *See Cause of Action v. Chi. Transit Auth.*, 815 F.3d 267, 277 n.13 (7th Cir. 2016).

3M acknowledged that in this action, the State sought to recover for damage "caused by the release of PFAS from 3M's Cordova facility." *Id.* at 2. And 3M did not contend that it produced or used MilSpec AFFF — or any AFFF — at the Cordova facility. *See* Doc. 1. But 3M claimed that the military's alleged use of MilSpec AFFF at the Rock Island Arsenal "plausibly contributed" to the damage that the State sought to recover for in this suit. *Id.* at 2; *accord id.* at 8, 10.

The State moved to remand the case to state court, arguing that the requirements for federal officer removal jurisdiction were not met. Docs. 3-4. The State reiterated that this suit was limited to damage caused by the Cordova facility. Doc. 4 at 1-2, 7-9. So, even if 3M was immune for activities related to MilSpec AFFF, that immunity would not be implicated here because the damage from the Cordova facility did not involve AFFF. *See id.* at 6-15. And even if 3M could point to AFFF as an alternate source of some damage to the Mississippi River and surrounding area, that would not implicate 3M's role as a MilSpec AFFF manufacturer or its relationship to the federal government. *See id.* at 12. Rather, it would mean that the State would not have met its burden to show that particular damage was caused by "3M's PFAS waste discharges from its Cordova facility." *Id.* Thus, this suit did not relate to 3M's federal activities, nor did 3M have a colorable federal defense. *Id.* at 7-12.

3M opposed the motion. Doc. 7. It did not dispute that MilSpec AFFF was never produced or used at the Cordova facility. *See id.* at 9-10. Instead, it argued that contamination from MilSpec AFFF could be an "alternate theory of causation"

for some damage to the river and the surrounding environment. *Id.* at 7 (cleaned up); *accord id.* at 12-14. Specifically, 3M argued that once the river flowed past the Rock Island Arsenal, contamination from the Cordova facility's PFAS "plausibly may be commingled" with contamination from MilSpec AFFF. *See id.* at 8.

**3M's attempt to transfer this case to AFFF multi-district litigation**

The day after filing its notice of removal, 3M filed a Notice of Potential Tag-Along Litigation, seeking to transfer this action to *In Re Aqueous Film-Forming Foams Prod. Liab. Litig.* ("*In re AFFF*"), a multi-district litigation in the District of South Carolina. Notice of Potential Tag-Along Litigation, *In re AFFF*, MDL No. 2873, ECF 1378 (J.P.M.L. Apr. 22, 2022). That litigation consolidated cases in which "plaintiffs allege that AFFF products used at airports, military bases, or certain industrial locations caused the release of PFOA or PFOS [specific types of PFAS used in AFFF] into local groundwater and contaminated drinking water supplies." *In re AFFF*, 357 F. Supp. 3d at 1392, 1394.

When initiating the MDL, the Judicial Panel on Multidistrict Litigation declined to include actions which related to PFAS but "d[id] not involve allegations relating to AFFFs." *Id.* at 1392, 1396. The Panel explained that these "non-AFFF actions" were "quite different" from cases relating to AFFF, because they involved "more site-specific issues, different modes of PFAS contamination, and different PFAS chemicals (whereas the AFFF actions are limited to PFOA and PFOS contamination)." *Id.* at 1396. Non-AFFF cases that the Panel declined to consolidate included actions concerning "discharges directly into the Tennessee River by various

industrial concerns in Decatur, Alabama" and "contamination originating from a shoe manufacturer's industrial waste." *Id.* As the litigation progressed, the Panel continued to decline to transfer cases that did not pertain to AFFF. *E.g.*, Order Vacating Conditional Transfer Order at 1-2, *In re AFFF*, MDL No. 2873, ECF 1511 (J.P.M.L. Aug. 3, 2022) (declining to transfer another case despite 3M's asserted "potential for commingling of PFAS from AFFF and non-AFFF sources").

Shortly after 3M filed its notice, the Panel's clerk determined that this action was "not appropriate for inclusion in this MDL." Notice to Counsel, *In re AFFF*, MDL No. 2873, ECF 1379 (J.P.M.L. Apr. 25, 2022). 3M then moved to transfer this action to the multi-district litigation. Doc. 5.[3] The Panel rejected 3M's motion, explaining that "the State's complaint is overwhelmingly focused on the operations at 3M's manufacturing facility in Cordova," and reiterated that the Panel had generally "excluded [from the multi-district litigation] actions involving non-AFFF discharges of PFAS from specific industrial locations." Doc. 11 at 2.

Approximately a year later, the State filed two separate actions relating to PFAS contamination at locations throughout the State. One action named more than 30 defendants, including 3M, and brought claims for contamination caused by AFFF. Complaint at 1-4, *People of the State of Ill. v. 3M Co.*, No. 1:23-cv-2620, ECF 1-1 (N.D. Ill. Apr. 26, 2023). The action identified community water supplies as examples of contaminated sites, and expressly excluded the contamination from the

---

[3] 3M also asked the district court to stay consideration of the State's remand motion until after the Panel ruled on the motion to transfer. Doc. 8. The district court did not rule on the motion to stay.

Cordova facility.  *Id.* at 4, 73-85.  This AFFF action was transferred to the *In re AFFF* MDL.  Transfer Order, *In re AFFF*, MDL No. 2873, ECF 2020 (J.P.M.L. Aug. 3, 2023).  The other action named more than 10 defendants, again including 3M. Complaint at 1, *People of the State of Ill. v. 3M Co.*, No. 1:23-cv-1341, ECF 1-2 (N.D. Ill. Mar. 3, 2023).  This action sought recovery for statewide PFAS contamination that was not attributable to AFFF, again identifying example contamination sites and expressly excluding contamination from Cordova.  *Id.* at 3-5, 45-58.  This action was also consolidated into the multi-district litigation because, the Panel determined, some of the identified examples of contaminated sites included community water supplies that were the subject of other lawsuits, brought by municipalities, that were already consolidated.  Transfer Order at 2-3, *In re AFFF*, MDL No. 2873, ECF 1927 (J.P.M.L. June 5, 2023).  The State has moved to remand this action and that motion remains pending.  *See* Plaintiff's Motion to Remand, *People of the State of Ill. v. 3M Co.*, No. 1:23-cv-1341, ECF 23 (N.D. Ill. Mar. 24, 2023).

**The district court's remand order**

Seventeen months after the State's motion to remand, the district court granted the motion and remanded the case to state court.  Doc. 23.  The district court determined that 3M satisfied the requirement that it was "acting under" the United States or its officers when it produced MilSpec AFFF because 3M alleged that it was a government contractor producing an item necessary for the military and under the military's specifications.  *Id.* at 5-7.  And the court concluded that 3M had alleged a colorable federal defense because it alleged the elements for government contractor

immunity with respect to its manufacture of MilSpec AFFF: (1) the military approved reasonably precise specifications for MilSpec AFFF, (2) the MilSpec AFFF conformed to those specifications, and (3) the federal government was aware of MilSpec AFFF's dangers. *Id.* at 7-8.

But the district court determined that this case was not sufficiently connected to or associated with 3M's alleged actions under color of federal authority. *Id.* at 8-12. As the court explained, "[t]hat a defendant acted generally under a federal directive and would have a colorable defense for those actions is not sufficient to remove a case; the actions under federal directive must relate to the claims brought in the suit." *Id.* at 8. But this case was limited to contamination caused by the Cordova facility, where 3M undisputedly did not produce or use AFFF, and the State had disclaimed any recovery based on AFFF. *See id.* at 9-10. Accordingly, 3M's allegedly federal activities associated with producing MilSpec AFFF that the military may have used at the Rock Island Arsenal did not relate to the claim in this case. *See id.* at 11-12. The court acknowledged that 3M may "point to PFAS contamination from the [military's] use and storage of MilSpec AFFF at the Rock Island Arsenal as an alternate source of the contamination that is the basis of this suit." *Id.* at 11. But, the court explained, any such damage would necessarily not have been caused by the Cordova facility (or by PFAS as defined in the complaint), and thus that "portion of the contamination" would be "eliminated from the case," regardless of whether 3M ultimately proved the elements of the government contractor defense. *Id.* at 12.

3M appealed. Doc. 24.

## SUMMARY OF ARGUMENT

The district court correctly ruled that there is no federal jurisdiction in this case. 3M can establish federal officer jurisdiction only if its actions as a federal contractor are connected with the State's claim for recovery. But the State's claim is solely for contamination caused by the Cordova facility, where 3M does not contend it produced or used MilSpec AFFF for the federal government. And for good measure, the State expressly alleged that it was not seeking a remedy for any AFFF contamination. This action, accordingly, has no relationship to 3M's production of MilSpec AFFF at a different facility.

3M's arguments to the contrary consist of variations on a theme: 3M may contend that MilSpec AFFF caused at least some contamination in the Mississippi River and its surrounding environment. But this argument will not implicate 3M's acts as a military contractor. It will simply ask a factfinder to assess whether the State has shown that the harm was caused by discharges of PFAS from the Cordova facility. 3M's allegations that this case relates to its production of MilSpec AFFF are not plausible because they directly contradict the claims in this case. And 3M cannot manufacture jurisdiction by expanding the State's complaint to encompass claims it did not bring. 3M's contention that this court's precedent suggests otherwise is wrong.

For similar reasons, 3M did not plausibly allege a government contractor immunity defense. Because the State does not seek to hold 3M liable for producing MilSpec AFFF, 3M's alleged immunity for doing so has no effect on this litigation.

# ARGUMENT

## I. This court reviews *de novo* the district court's remand order, and credits allegations in a notice of removal that are plausible, not speculative or conclusory.

The federal officer removal statute allows a defendant "acting under" a United States officer to remove to federal court a civil action "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). The statute's "purpose is to protect the Federal Government" from state "interference with its operations." *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 150 (2007) (cleaned up). It accordingly protects federal officers from "local prejudice" and provides "a federal forum in which to assert federal immunity defenses." *Id.* (cleaned up).

This court reviews *de novo* a district court's granting a motion to remand a case back to state court after it was removed to federal court. *Betzner v. Boeing Co.*, 910 F.3d 1010, 1014 (7th Cir. 2018). The court may affirm the district court's remand order on any basis supported by the record. *See Kowalski v. Boliker*, 893 F.3d 987, 994 (7th Cir. 2018) (reviewing district court order that it lacked subject matter jurisdiction); *see also Baker v. Atl. Richfield Co.*, 962 F.3d 937, 946 (7th Cir. 2020) (reaching element of federal officer removal jurisdiction not evaluated by district court).

A defendant seeking to remove a case to federal court "'bears the burden of establishing federal jurisdiction.'" *Baker*, 962 F.3d at 941 (quoting *Betzner*, 910 F.3d at 1014). The federal officer removal statute is construed "liberally," *Betzner*, 910 F.3d at 1014, not "narrow[ly]" or "gruding[ly]," *Acker*, 527 U.S. at 431 (cleaned up).

But nor is federal officer jurisdiction unlimited. Rather, the allegations in a notice of removal must satisfy "federal pleading standards," *Betzner*, 910 F.3d at 1015, meaning they must be "facially plausible," *Baker*, 962 F.3d at 941. "[S]peculative" allegations, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and "mere conclusory statements," *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), will not suffice. Nor must the court blindly accept "legal conclusions," *see id.*, including about the presence of federal issues, *see City & Cnty. of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1110 (9th Cir. 2022) (no federal officer jurisdiction because "Defendants' conclusory statements and general propositions of law do not make their defenses colorable"), *cert. denied*, 143 S. Ct. 1795 (2023); *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1182 (7th Cir. 2012) (claimed federal defense must be "plausible" (cleaned up)).

## II.  Remand to state court was correct because the district court lacked federal officer jurisdiction over this action.

To establish federal officer jurisdiction, a removing defendant must plausibly allege four elements:  the defendant was (1) a "'person'" (2) "'acting under'" the United States, its agencies, or its officers (3) "that has been sued 'for or relating to any act under color of such office,'" and (4) "has a colorable federal defense to the plaintiff's claim." *Ruppel*, 701 F.3d at 1180-81 (quoting 28 U.S.C. § 1442(a)(1)). Here, the State did not dispute that 3M is a "person" within the meaning of the removal statute. *See* Doc. 4; *cf. Betzner*, 910 F.3d at 1015 ("Corporations are persons under § 1442(a)"). And the district court determined that 3M's statements that it produced MilSpec AFFF as a contractor based on detailed specifications sufficed to allege that it was "acting under" the United States, its agencies, or its officers. *See*

Doc. 23 at 5-6; *cf. Betzner*, 910 F.3d at 1015 (contractor was "acting under" federal government when government used contractor "to achieve an end it would have otherwise used its own agents to complete" subject to "detailed and ongoing control" (cleaned up)).

But as the district court correctly held, 3M did not satisfy the "for or relating to" element. The State's action brought a claim only for contamination caused by PFAS at the Cordova facility, which is not related to 3M's production of a different chemical (MilSpec AFFF) at a different facility, that the military may have used at the Rock Island Arsenal located 25 miles downriver. Even if 3M could ultimately establish that MilSpec AFFF was the source of some of the contamination that the State alleges comes from Cordova, the fact that 3M may have produced the MilSpec AFFF for the federal government would have no impact on this case.

Alternatively, and for similar reasons, the court can affirm because 3M did not allege a colorable federal defense to the State's claim. Although the district court held that 3M satisfied this element by alleging a government contractor defense, that defense is irrelevant here. Because the State can only recover for contamination caused by PFAS from Cordova, and not from AFFF, 3M will not be liable for producing MilSpec AFFF regardless of whether it enjoys government contractor immunity.

### A. The district court correctly held that this action was not for or relating to 3M's alleged acts under color of federal office.

3M's only claimed act under color of federal authority was its production of MilSpec AFFF, which the United States military allegedly used at the Rock Island

14

Arsenal. *See* Doc. 1 at 13-15. But 3M's production of AFFF does not relate to the State's claim for contamination from 3M's Cordova facility, 25 miles upriver from the Rock Island Arsenal.

While the "acting under" requirement establishes the relationship between the federal government and the defendant, the "for or relating to" requirement connects the defendant's federal acts with the "conduct the [plaintiff] complain[s] of." *See Baker*, 962 F.3d at 943. An action is "for or relating to" a defendant's federal activities if the plaintiff's claim is "connected" or "associated" with the defendant's acts under color of federal office. *Id.* at 943-44; *see Acker*, 527 U.S. at 431 (requirement looks at nexus between "the charged conduct and asserted official authority" (cleaned up)). This requirement "is distinct from the 'acting under' requirement in the same way a bona fide federal officer could not remove a trespass suit that occurred while he was taking out the garbage." *Betzner*, 910 F.3d at 1015.

The State's claim is not connected or associated with 3M's production of AFFF for the federal government. The State has sought recovery in this action only for PFAS contamination from the Cordova facility, *see* Doc. 1-1 at 5, 15-16, 40-41, but 3M has never contended that it produced or used MilSpec AFFF at Cordova, *see* Doc. 7 at 9-10. And the State expressly clarified in the complaint that the only contamination for which it seeks to recover is from PFAS that does not include AFFF. Doc. 1-1 at 12. Even if 3M could show that MilSpec AFFF from the Rock Island Arsenal caused some environmental contamination, that contamination is, by definition, not a part

of the "charged conduct," *see Acker*, 527 U.S. at 431 (cleaned up), that the State "complain[s] of," *Baker*, 962 F.3d at 943.

3M's attempts to connect its production of MilSpec AFFF to this case fall flat. It first attacks the State's decision to limit this case to only one source of contamination — Cordova, where 3M does not contend it ever produced MilSpec AFFF — as invalid. AT Br. 24-26, 29-31. But the State was well within its rights to choose which claim to bring in this case, and to disavow other claims that would add unnecessary complexity and delay resolution for a source of ongoing PFAS discharge. 3M then relies on strained readings of this court's precedent and the district court's order, in an effort to expand federal jurisdiction to this case simply because of the complexity inherent in environmental issues. *Id*. at 22-28. Finally, 3M asserts that its immunity for MilSpec AFFF would somehow be a defense in this case, where it cannot be liable for contamination from MilSpec AFFF. *Id*. at 31-38. None of these arguments have merit.

### 1. The State's choice to limit this action to non-AFFF contamination caused by the Cordova facility was valid.

The State was well within its rights to limit this action to contamination caused by the Cordova facility. A plaintiff is "the master of the claim" and may choose which causes of action to bring, even when doing so "avoid[s] federal jurisdiction." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Numerous courts have accordingly agreed that when a State, or any plaintiff, chooses to pursue recovery for harm from a particular source, and disclaims recovery from other sources, courts will honor that pleading choice. For example, in *City of Hoboken v.*

*Chevron Corp.*, the State of Delaware and the City of Hoboken, New Jersey, brought claims against oil companies seeking damages for environmental harm, but disclaimed damages "caused by fuel provided to the federal government." 45 F.4th 699, 713 (3d Cir. 2022). The oil companies removed the case, but the Third Circuit held that there was no federal officer jurisdiction, because Delaware and Hoboken had elected to "carve out" potential recovery for the defendants' federal acts. *Id.*

Other courts have similarly determined that defendants cannot remove a case based on alleged federal involvement in an "alternative theory of causation" that a plaintiff has "expressly disavowed." *Young v. Tyco Fire Prod., LP*, No. 21-15912, 2022 WL 486632, at *2 (9th Cir. Feb. 17, 2022); *see, e.g., District of Columbia v. Exxon Mobil Corp.*, 89 F.4th 144, 156-57 (D.C. Cir. 2023) (District of Columbia's statement that it "w[ould] not seek damages" for overuse of fossil fuels, and "would seek only those damages associated with misrepresentations [by defendants]," meant that there was "no link" between defendants' extraction of fossil fuels under federal leases and "the damages at issue in this lawsuit"); *Wood v. Crane Co.*, 764 F.3d 316, 321 (4th Cir. 2014) (disclaimer in plaintiff's amended complaint had "real effect" because it "expressly disclaimed any damages" for valves defendant had produced for the military); *Gov't of Puerto Rico, v. Eli Lilly & Co.*, No. CV 23-1127 (JAG), 2023 WL 4830569, at *1 (D.P.R. July 13, 2023) ("The Court finds that this disclaimer is

sufficiently clear and specific. . . . The Government explicitly renounced claims of a specific nature[.]"), *appeal pending*, Nos. 23-1612 & 23-1613 (1st Cir.).[4]

Indeed, other district courts have granted motions to remand similar cases that 3M had removed to federal court. The States of New Hampshire and Maine each brought lawsuits against 3M for contamination in those States caused by PFAS other than AFFF. *Maine v. 3M Co.*, No. 2:23-CV-00210-JAW, 2023 WL 4758816, at *1-2 (D. Me. July 26, 2023), *appeal pending*, No. 23-1709 (1st Cir.); *New Hampshire v. 3M Co.*, 665 F. Supp. 3d 215, 221 (D.N.H. 2023), *appeal pending*, No. 23-1362 (1st Cir.). In these actions, the States "expressly disclaimed any recovery for contamination caused by AFFF." *New Hampshire*, 665 F. Supp. 3d at 221; *accord Maine*, 2023 WL 4758816, at *3. Like the State here, they also each brought a separate action for AFFF contamination. *Maine*, 2023 WL 4758816, at *1; *New Hampshire*, 665 F. Supp. 3d at 221. 3M removed both non-AFFF actions, claiming

---

[4] *See also, e.g., Rhode Island v. Shell Oil Prod. Co.*, 979 F.3d 50, 60 (1st Cir. 2020) ("no nexus" between State of Rhode Island's claim and defendant's "activities on Naval bases, which are explicitly not a part of Rhode Island's case"), *judgment vacated on other grounds*, 141 S. Ct. 2666 (2021), *and reasoning readopted*, 35 F.4th 44, 53 n.6 (1st Cir. 2022); *Grosch v. Tyco Fire Prod. LP*, No. CV-23-01259-PHX-DWL, 2023 WL 5993548, at *5 (D. Ariz. Sept. 15, 2023) ("Plaintiffs have expressly disavowed any claim for relief premised on exposure to MilSpec AFFF. This disavowal, in turn, moots Tyco's removal attempt." (cleaned up)); *Kelleher v. A.W. Chesterton Co.*, No. 15-CV-893-SMY-SCW, 2015 WL 7422756, at *2 (S.D. Ill. Nov. 23, 2015) (plaintiff's express claim waiver "rendered any federal defenses moot" and concluding that "[t]o deny remand of this case would affirm [defendant's] right to assert a defense against a claim that does not exist"); *Hayden v. 3M*, No. 15-2275, 2015 WL 4730741, at *3-4 (E.D. La. Aug. 10, 2015) (remanding case where plaintiff "disavow[ed] the pursuit of damages that may have resulted from asbestos exposure during [plaintiff's] time in the Navy").

federal officer jurisdiction.  *Maine*, 2023 WL 4758816, at *2; *New Hampshire*, 665 F. Supp. 3d at 225.

The district courts granted New Hampshire's and Maine's motions to remand. The States' disclaimer of "recovery for harm from AFFF contamination . . . eliminate[d] any connection between the State's claims in this suit and 3M's production of MilSpec AFFF."  *New Hampshire*, 665 F. Supp. 3d at 220; *see Maine*, 2023 WL 4758816, at *10 (adopting *New Hampshire*'s reasoning).  As it does here, 3M asserted that the non-AFFF contamination that the States sought to remedy may have "commingled" with contamination from MilSpec AFFF.  *Maine*, 2023 WL 4758816, at *8; *New Hampshire*, 665 F. Supp. 3d at 226.  But this potential commingling did not connect the States' claims and 3M's production of MilSpec AFFF.  *See Maine*, 2023 WL 4758816, at *10; *New Hampshire*, 665 F. Supp. 3d at 228.  Rather, if 3M showed that some or all contamination was caused by AFFF, then the States would not recover for that contamination.  *Maine*, 2023 WL 4758816, at *10; *New Hampshire*, 665 F. Supp. 3d at 228-29.  This would be so "regardless of whether 3M supplied the AFFF under federal authority or warned the government about its dangers."  *New Hampshire*, 665 F. Supp. 3d at 229; *see also* Order, *South Carolina v. 3M Co.*, No. 2:23-cv-05979, ECF 13 (D.S.C. Feb. 29, 2024) (relying on *New Hampshire*, *Maine*, and the district court here to remand PFAS case that disclaimed recovery for AFFF contamination, which 3M had removed under § 1442(a)(1)).

The same is true here.  3M's entire basis for removing this case was its repeated assertion that "the alleged contamination for which the State seeks to

recover for in this case encompasses PFAS contamination attributable to in part to MilSpec AFFF." Doc. 1 at 8; *see, e.g., id.* at 2 (alleging that 3M would assert government contractor defense "[t]o the extent that the State's alleged damages arise from MilSpec AFFF"). But the State's damages *cannot* arise from MilSpec AFFF. The complaint specifically excludes contamination from *any* AFFF. Doc. 1-1 at 12. Moreover, the State's claim encompasses only contamination from Cordova, *see id.* at 5, 15-16, 40-41, and 3M does not contend that it produced or used MilSpec AFFF there, *see* Doc. 7 at 9-10. If 3M ultimately shows that some of the contamination in the Mississippi River, or anywhere else, came from MilSpec AFFF, then that contamination necessarily would not have come from Cordova. In that scenario, the State will not have met its burden to show that particular contamination was caused by the Cordova facility and will be unable to recover for that contamination. *See New Hampshire*, 665 F. Supp. 3d at 229; *Maine*, 2023 WL 4758816, at *10.

Indeed, the lack of connection between the State's claim and 3M's production of MilSpec AFFF is even starker here than in *New Hampshire* and *Maine*. There, New Hampshire and Maine sought to recover for PFAS contamination at sites across those States. *See Maine*, 2023 WL 4758816, at *3; *New Hampshire*, 665 F. Supp. 3d at 222. Here, by contrast, the State seeks to recover only for contamination caused by the Cordova facility, *e.g.*, Doc. 1-1 at 5, 15-16, 40-41, where it is undisputed that 3M did not produce or use MilSpec AFFF, *see* Doc. 1, Doc. 7 at 9-10. 3M's concerns about commingled contamination are therefore even less relevant here.

To be sure, some courts have recognized a distinction between a "specific decision to 'renounce[ ]' a certain claim," *Karmon v. Cal. Inst. of Tech.*, No. 2:21-cv-08910, 2022 WL 102206, at *5 (C.D. Cal. Jan. 10, 2022) (citation omitted), and disclaimers that amount to "artful pleading for purposes of circumventing federal officer jurisdiction," *Batchelor v. Am. Optical Corp.*, 185 F. Supp. 3d 1358, 1363 (S.D. Fla. 2016) (cleaned up) (collecting cases); *see, e.g., St. Charles Surgical Hosp., LLC v. La. Health Serv. & Indem. Co.*, 990 F.3d 447, 451 (5th Cir. 2021). Disclaimers fall into the latter category, and some courts consider them ineffective, when they are "circular," *Reinbold v. Advanced Auto Parts, Inc.*, No. 18-CV-605-SMY-DGW, 2018 WL 3036026, at *3 (S.D. Ill. June 19, 2018), use "boilerplate" language, *Batchelor*, 185 F. Supp. 3d at 1363, or are internally contradictory — that is, they "disavowed claims based on a defendant's [federal] acts," but "nonetheless, sought to recover based on a defendant's official acts," *id.* Here, however, the State expressly disclaimed recovery for contamination caused by any type of AFFF, Doc. 1-1 at 12, and for good measure, limited the complaint to contamination caused by a single facility, *id.* at 5, 15, 40-41, where 3M does not contend that MilSpec AFFF was present. This disclaimer was "express, unambiguous, and plain" and thus unlike disclaimers courts have deemed ineffective. *See Maine*, 2023 WL 4758816, at *10.

At bottom, 3M's argument would allow defendants to manufacture federal jurisdiction by unilaterally expanding the claims a plaintiff asserts. But defendants cannot "freely rewrite the complaint and manufacture a cause of action explicitly disclaimed by Plaintiff and then ask the Court to accept their 'theory of the case' for

purposes of removal." *Delaware v. BP Am. Inc.*, 578 F. Supp. 3d 618, 636 (D. Del. 2022), *aff'd sub nom. Hoboken*, 45 F.4th 699. Accordingly, the court should affirm the district court's determination that it lacked removal jurisdiction.

### 2.    *Baker* does not compel reversal.

For its part, 3M bases its efforts to undermine the State's pleading choices on this court's decision in *Baker v. Atlantic Richfield Co.*, AT Br. 24-26, 28-29, but that case does not render the State's disclaimer ineffective. In *Baker*, the plaintiffs alleged that the defendants' manufacturing operations contaminated a housing complex that was later built on the former manufacturing site. 962 F.3d at 940. The defendants removed the case, claiming that some of their manufacturing was for the government during and shortly after World War II. *Id.* at 939-41. The district court remanded the case, because "the Companies had only acted under color of federal office for a small part of the alleged time period at issue." *Id.* at 941. This court reversed, because there was "no support in the statute or precedent for this rule that a removing defendant must operate under government orders for most of the relevant time frame." *Id.* at 945. Rather, it was "enough for the present purposes of removal that at least some of the pollution arose from the federal acts." *Id.*

In a footnote, the court addressed a separate argument by one of the removing defendants, DuPont.[5] The complaint had alleged that plaintiffs "were not suing

---

[5] The court's discussion of the plaintiff's disclaimer applied only to the claim against DuPont, not to the claim against its co-defendant Atlantic Richfield. *See Baker*, F.3d at 940-41, 945 n.3. The court had already determined that there was federal officer jurisdiction over the claim against Atlantic Richfield, *see id.* at 945, and "courts have been clear in holding that a federal officer need not obtain the consent of other

DuPont" over its production of Freon-12, the activity that DuPont allegedly performed for the government. *Id.* at 940-41. But DuPont had alleged that "its Freon-12 production resulted in waste streams that contained lead and arsenic," which were "the two main toxins the Residents claim harmed them." *Id.* at 945 n.3; *see id.* at 940 (plaintiffs alleged they were exposed to "hazardous substances like lead and arsenic"). The court explained that the plaintiffs could not "have it both ways," seeking recovery for exposure to lead and arsenic, but simultaneously disclaiming recovery for DuPont's activities that allegedly led to their exposure to lead and arsenic. *Id.* at 945 n.3.

Here, the State is not trying to "have it both ways." *See id.* 3M's only alleged federal activity is the production of MilSpec AFFF, but the State's complaint unambiguously disclaimed recovery for any contamination from AFFF. What's more, the State's claim is only for PFAS contamination caused by the Cordova facility, where it is undisputed that MilSpec AFFF was not produced or used. Thus, here, unlike in *Baker*, it is not the case that "at least some of the pollution" about which the plaintiffs complain "arose from the federal acts." *See id.* at 945. By contrast, *Baker* was an example of a disclaimer that was internally contradictory: the plaintiffs "disavowed claims based on a defendant's [federal] acts," but "nonetheless, sought to recover based on [those] acts." *See Batchelor*, 185 F. Supp. 3d at 1363. The State's disclaimer contains no such contradiction.

---

defendants to remove under Section 1442." *O'Callaghan v. United States*, 686 F. Supp. 2d 826, 828 (N.D. Ill. 2010) (collecting cases). The court's footnoted evaluation of DuPont's disclaimer argument was therefore unnecessary to its holding.

3M is also wrong to contend that *Baker* allows 3M to remove this case because it presents "'difficult causation question[s].'" AT Br. 25, 27, 29, 31, 33 (quoting *Baker*, 962 F.3d at 945 n.3). In *Baker*, this court noted that there were "serious questions" about whether the pollution that caused the plaintiffs' complained-of harm "flowed from the Companies' specific wartime production for the federal government or from their more general manufacturing operations outside those confines." 962 F.3d at 944. These, the court explained, were "merits questions that a federal court should decide." *Id.*; *see id.* at 945 n.3 ("whether the Residents' injuries arise from products DuPont manufactured for the government" was another "difficult causation question" to be resolved at the merits stage). But here, it is not possible for the complained-of contamination to have "flowed from" 3M's production of MilSpec AFFF "for the federal government." *See id.* at 944. Rather, any contamination necessarily flowed from PFAS at the Cordova facility, which does not include AFFF. And if the State fails to prove that some or all of the contamination was caused by this PFAS, then the State "will fail to establish its own case" with respect to that contamination. *New Hampshire*, 665 F. Supp. 3d at 229; *accord* Doc. 23 at 11-12.

To be sure, determining the source of at least some of the contamination will likely require factual discovery and expert testimony, as 3M notes. *See* AT Br. 34. But the "causation question[s]" in *Baker* did not warrant removal because they were "difficult." *See* 962 F.3d at 945 n.3; *cf., e.g.*, AT Br. 25 (quoting *Baker*). Rather, those questions warranted removal because answering them required assessing

"whether the [plaintiffs'] injuries arise from products [the defendant] manufactured for the government." *Baker*, 962 F.3d at 945 n.3; *see id.* at 945 (federal court must "answer" question of "whether the challenged act was outside the scope of Defendants' official duties" (cleaned up)). But in this case, the answer to that question is already known: because the injuries arise only from the Cordova facility, and do not arise from MilSpec AFFF, they necessarily do not arise from "products [3M] manufactured for the government." *See id.* at 945 n.3. Indeed, courts routinely remand cases that present complex causation questions when those questions do not require a state court to resolve a federal issue. *E.g.*, *Hoboken*, 45 F.4th at 713 (rejecting federal officer removal even though the defendants "say that these suits cannot separate harm caused by military fuel use from harm caused by civilian fuel use"); *Young*, 2022 WL 486632, at *2 (no federal officer jurisdiction because plaintiffs "expressly disavowed" contamination from MilSpec AFFF, and although defendant presented MilSpec AFFF in groundwater as an "alternative theory of causation," this did not create a nexus between MilSpec AFFF and plaintiff's claim because plaintiff did not bring claim based on groundwater exposure).

3M's other cited authority is equally unavailing. *See* AT Br. 29-30. 3M points to one district court case, *Nessel v. Chemguard, Inc.*, in which the State of Michigan sought recovery for contamination caused by AFFF produced for commercial use. No. 1:20-CV-1080, 2021 WL 744683, at *1 (W.D. Mich. Jan. 6, 2021). Michigan also brought a separate action for contamination by MilSpec AFFF. *Id.* The district court denied the plaintiffs' motion to remand the commercial AFFF action, determining

that there was "no evidence" that "the injuries from Commercial AFFF and the injuries from MilSpec AFFF will be distinguishable," because the plaintiffs admitted that "PFAS from AFFF spread contamination throughout the State." *Id.* at *3. The court determined that it was "entirely possible that Plaintiffs' injuries occurred from actions taken while Defendants were acting under color of federal office: namely, MilSpec AFFF," and therefore that the defendants were entitled to raise "the production of MilSpec AFFF as a defense" or "an alternate theory of causation." *Id.*[6]

*Nessel* is both distinguishable and unpersuasive. Here, the State is claiming recovery for contamination caused by the Cordova facility only (and its other lawsuits expressly do not involve Cordova), whereas in *Nessel*, Michigan sought recovery for "contamination throughout the state." *Id.* And here, unlike in *Nessel*, the State disclaimed recovery for any type of AFFF contamination, rather than attempting to differentiate between "contamination from two different kinds of AFFF." *New Hampshire*, 665 F. Supp. 3d at 228 (distinguishing *Nessel* on this basis).

More importantly, *Nessel*'s reasoning is unconvincing. As *New Hampshire* explained, 3M will not be liable for contamination caused by MilSpec AFFF, regardless of whether the sources of some or all of the contamination can be distinguished. On one hand, "[i]f the sources of contamination cannot be distinguished, 3M cannot be held liable." 665 F. Supp. 3d at 229. On the other, "if a

---

[6] Unlike orders remanding cases removed under the federal officer removal statute, the denial of Michigan's motion to remand was not immediately appealable. *See* 28 U.S.C. § 1447(d). The *Nessel* case was later transferred to the AFFF multi-district litigation. *In re AFFF*, MDL No. 2873, ECF 866 (J.P.M.L. Feb. 4, 2021).

factfinder can distinguish the sources of contamination, 3M will prevail to the extent the factfinder determines contamination came from AFFF." *Id.* In neither event would 3M be liable for producing MilSpec AFFF, "regardless of whether 3M supplied the AFFF under federal authority." *Id.* Accordingly, every district court to have considered *Nessel*'s reasoning on this point has rejected it. Doc. 23 at 11-12; *Maine*, 2023 WL 4758816, at *9-10; *New Hampshire*, 665 F. Supp. 3d at 229; *see also Grosch*, 2023 WL 5993548, at *5, *7 n.6 (finding no nexus between "conduct at issue in this lawsuit" and defendant's "conduct undertaken at the direction of the military" and rejecting *Nessel* on related grounds).

And 3M's cited order in *Curiale v. A Clemente, Inc.*, is distinguishable for the same reason as *Baker*. *See* AT Br. 30. The plaintiff there "disclaimed harm arising from the government contracts," but "did not disclaim allegations related to the chemicals that are subject to the government contract." No. 1:23-cv-00187, 2023 WL 4362722, at *6 (D.N.J. July 5, 2023). As in *Baker*, this is the type of internally contradictory disclaimer that courts have found to be ineffective. *Supra* p. 23.

In sum, even though courts generally "'credit'" allegations in a notice of removal, *see* AT Br. 26 (quoting *Acker*, 527 U.S. at 432), those allegations must still satisfy the federal pleading standard, *supra* p. 13. 3M's speculative assertions that the State seeks to recover for contamination "attributable in part to MilSpec AFFF," or that its "claims encompass contamination from MilSpec AFFF" are not plausible because they directly contradict the complaint. *See* Doc. 1 at 8, 14; *see also, e.g., id.*

at 2, 10 (similar).  Similarly, the conclusory assertion that determining causation will be complex does not transform causation into a federal issue.

### 3. The district court applied the correct legal standard.

3M's attacks on the district court's reasoning also fall short.  AT Br. 27-28.  As 3M tells it, because the district court used the phrase "stemming from" when explaining that it was "impossible for Defendant to be held liable for damages stemming from its actions under federal authority," Doc. 23 at 12, the court applied the pre-2011 removal statute, AT Br. 28.  3M is incorrect.

Before 2011, the federal officer removal statute allowed defendants to remove actions "for" an act under color of federal authority.  *See DeFiore v. SOC LLC*, 85 F.4th 546, 557 n.6 (9th Cir. 2023).  In 2011, Congress amended the statute to allow removal by federal officers of suits "for or relating to" such acts.  *Id.*; *see* Removal Clarification Act of 2011, Pub. L. 112-51, § 2(b)(1)(A), 125 Stat. 545, 545.  As this court has explained, adding the phrase "or relating to" means that defendants may remove actions "not just *causally* connected, but alternatively *connected* or *associated*, with acts under color of federal office."  *Baker*, 962 F.3d at 943 (emphasis in original).  The court expressly adopted this approach in *Baker*, though it noted that it had "essentially implemented" it in earlier cases, and that the Supreme Court had "never utilized a rigid causation standard for removal," even "long before the Removal Clarification Act of 2011."  *Id.* at 943-44 (cleaned up); *see also DeFiore*, 85 F.4th at 557 n.6 ("We read our 'causal nexus' test as incorporating the 'connected or

associated with' standard reflected in Congress's 2011 amendment and the Supreme Court's decisions.").

The district court applied the broader "relating to" standard. *See, e.g.*, Doc. 23 at 8 ("the actions under federal directive must relate to the claims brought in the suit") (citing *Baker*), 12 ("the requisite connection or association is missing"). Indeed, the court noted that this requirement was "more inclusive" than a "causal connection." *Id.* at 9 (citing *Baker*). And the district court, appropriately, reached the same conclusion as other courts applying the same "connection or association" standard to the same issue. *See Maine*, 2023 WL 4758816, at *7, 10; *New Hampshire*, 665 F. Supp. 3d at 227-28 (citing *Baker*); *see also* Order at 4-5, *South Carolina v. 3M Co.*, No. 2:23-cv-05979, ECF 13 (D.S.C. Feb. 29, 2024). Indeed, it is 3M, not the district court, who transforms the legal standard, by claiming that removal is warranted because there are "difficult causation questions," even though the State's claim does not relate to 3M's role producing MilSpec AFFF at a different facility. *See, e.g.,* AT Br. 29.

Nor did the district court err by citing *Reinbold v. Advanced Auto Parts, Inc.*, for the general proposition that "[c]ourts have consistently granted motions to remand where the plaintiff expressly disclaimed the claims upon which federal officer removal was based." Doc. 23 at 10 (quoting 2018 WL 3036026, at *2). 3M contends that this statement was effectively abrogated by *Baker*. *See* AT Br. 30 n.2. But as explained, the disclaimer in *Baker* was ineffective because it contradicted itself. *Supra* p. 23. *Baker* did not suggest that defendants could expand the complaint to

encompass claims that the plaintiff did not allege to manufacture federal jurisdiction. And by limiting this action to Cordova, and expressly disclaiming recovery for contamination by AFFF, the State did "disclaim[ ] federal-related damages altogether." *See* AT Br. 30 n.2.

> **4.      3M's claimed government contractor defense does not apply and does not connect its federal activities to the State's claim.**

Finally, 3M argues that the State's claim for PFAS discharge from 3M's Cordova facility relates to its production of MilSpec AFFF because 3M "may raise the federal government contractor defense at several points in the litigation." AT Br. 32. These arguments repackage its contentions that it may point to MilSpec AFFF as an alternate source of contamination, in which case the State would not recover regardless of government contractor immunity.

3M first asserts that it will raise the federal government contractor defense whenever it points to MilSpec AFFF as an alternate source of the contamination that the State claims was caused by the Cordova facility. AT Br. 32-33. But if 3M establishes that MilSpec AFFF caused some or all of the contamination, then 3M will not be liable for that contamination because the State will not have proven its case, regardless of whether the federal government contractor defense applies. *See New Hampshire*, 665 F. Supp. 3d at 228. That MilSpec AFFF from the Rock Island Arsenal may have "commingled" with PFAS from the Cordova facility 25 miles upriver, *see* AT Br. 32, might make the ultimate question of causation complex, but not one that relates to 3M's alleged acts as a government contractor. *See Hoboken*,

45 F.4th at 713 (remanding case and rejecting defendants' argument "that these suits cannot separate harm caused by military fuel use from harm caused by civilian fuel use").

Second, 3M says it "may" raise the government contractor defense because the State has sought to hold 3M jointly and severally liable for the alleged harm. *See* AT Br. 33-38. 3M offers two versions of this argument, one if the factfinder "cannot determine" whether contamination comes from the Cordova facility or from MilSpec AFFF allegedly at the Rock Island Arsenal, *id.* at 33-36, and one if the factfinder can "distinguish between and among PFAS sources," *id.* at 37-38. Neither formulation is availing. Joint and several liability would be relevant if 3M can point to another tortfeasor responsible for at least some of the recovery sought in this case. *See* 735 ILCS 5/2-1118. But it applies only to "the injury or damage for which recovery is sought," *id.* — which, again, is only for contamination caused by PFAS from the Cordova facility, Doc. 1-1 at 5, 15-16, 40-41. 3M cites no authority suggesting that joint and several liability could allow the State to belatedly expand the case to encompass new sources of contamination deliberately excluded from the complaint.

Indeed, numerous courts have rejected the notion that seeking joint and several liability means that a plaintiff who has disclaimed liability from "government-directed conduct" somehow "still seeks to recover" for that conduct. *People of the State of Cal. v. Eli Lilly & Co.*, No. 2:23-CV-01929-SPG-SK, 2023 WL 4269750, at *6 (C.D. Cal. June 28, 2023), *appeal pending*, Nos. 23-55597 & 55599 (9th Cir.); *accord Ohio ex rel. Yost v. Ascent Health Servs. LLC*, No. 2:23-CV-1450, 2024 WL 23187, at

*3 (S.D. Ohio Jan. 2, 2024), *appeal pending*, No. 24-3033 (6th Cir.); *Puerto Rico*, 2023 WL 4830569, at *2.  And even if the contamination is "indivisible," *see* AT Br. 33-34, courts routinely grant motions to remand in cases presenting a classic indivisible injury — harm from asbestos — when a plaintiff disclaims one source of exposure. *E.g., Batchelor*, 185 F. Supp. 3d at 1364; *Hayden*, 2015 WL 4730741, at *3; *Kelleher*, 2015 WL 7422756, at *1-2.

At bottom, if the evidence "shows that AFFF caused any of the damages in this case, the portion attributable to AFFF would be subtracted from any damages awarded the State."  *New Hampshire*, 665 F. Supp. 3d at 228.  And if it truly is impossible for a factfinder to determine the source of all the alleged contamination, then the defense would still be irrelevant, because "no damages could be awarded." *New Hampshire*, 665 F. Supp. 3d at 228.

The "for or relating to" requirement allows government contractors to remove only those actions that connect to their federal activities.  Here, that connection is missing.  Even if 3M proves that MilSpec AFFF caused some contamination to the Mississippi River, a factfinder need not consider who produced that AFFF, much less whether it was done at the direction of the federal government.  3M's alleged production of MilSpec AFFF does not relate to this case.

### B.      Alternatively, 3M does not have a colorable federal defense to the State's claim.

For similar reasons, the court can affirm on the alternate ground that, as the State explained in the district court, 3M does not have a colorable federal defense to the State's claim.  *See* Doc. 4 at 10, 15; *cf. Baker*, 962 F.3d at 946 (reaching colorable

defense element even though district court did not analyze in detail); *Kowalski*, 893 F.3d at 994 (court can affirm order that federal jurisdiction is absent on any basis apparent from the record). 3M asserted the defense of government contractor immunity based on its production of MilSpec AFFF. Doc. 1 at 16-19. But while that might be a colorable defense to a claim for contamination from MilSpec AFFF, that is not a claim in this case. Thus, although the district court determined that this requirement was satisfied because 3M alleged the elements of a government contractor defense, Doc. 23 at 7-8, 3M did not allege a colorable defense to *this claim*.

Determining whether a defendant has a colorable federal defense, for purposes of federal officer jurisdiction, requires the court to assess "what kind of claims [the plaintiff's] complaint alleges." *Ruppel*, 701 F.3d at 1182. The "case is removable" if the defendant has a colorable defense to any claim alleged in the complaint. *Id.* Here, the State's only claims are for contamination caused by PFAS from the Cordova facility. Doc. 1-1 at 5, 15-16, 40-41. And 3M's only claimed federal defense was government contractor immunity, *see* Doc. 1 at 16, in which military contractors can be immunized from state tort law in certain circumstances, *see Baker*, 962 F.3d at 945-46. That defense, "'[s]tripped to its essentials,'" effectively asserts "'[t]he Government made me do it.'" *In re Katrina Canal Breaches Litig.*, 620 F.3d 455, 465 (5th Cir. 2010) (quoting *In re Joint E. & S. Dist. N.Y. Asbestos Litig.*, 897 F.2d 626, 632 (2d Cir. 1990) (alteration in original)).

But as 3M acknowledged in its notice of removal, the government contractor defense would apply "[t]o the extent that the State's alleged damages arise from

MilSpec AFFF." *See* Doc. 1 at 2. Because the State limited this action to 3M's PFAS activities at its Cordova facility, that extent is zero. The issues presented by a federal contractor defense — for example, whether 3M followed detailed specifications or whether the government knew of the dangers of AFFF — will never be implicated by this case, *supra* pp. 30-32. 3M may be entitled to litigate federal defenses in federal court, *see* AT Br. 35-36, but it is not entitled to broaden the State's complaint to shoehorn an irrelevant federal defense into this case.

### C.  3M's policy arguments are flawed and irrelevant.

Finally, 3M falls back on the specter of "duplicative litigation," claiming that remand would give the State "multiple bites of the damages apple." AT Br. 38-39. 3M's argument misconstrues both facts and law. To begin, 3M relies on its factually erroneous assertion that this lawsuit, and the State's separate lawsuit about AFFF contamination, present "identical claims" about "the same locations." AT Br. 39. They do not. This case is about one facility in Cordova, where 3M does not contend it produced or used AFFF. *See* Doc. 7 at 9-10. This case will not allow the State to recover for contamination from MilSpec AFFF. *Supra* pp. 19-20, 26-27. And the State's other two lawsuits explicitly do not seek recovery for any contamination at issue here. *Compare* Doc. 1-1 at 28-42 *with* Complaint at 4, *People of the State of Ill. v. 3M Co.*, No. 1:23-cv-2620, ECF 1-1 (N.D. Ill. Apr. 26, 2023) *and* Complaint at 5, *People of the State of Ill. v. 3M Com.*, No. 1:23-cv-1341, ECF 1-2 (N.D. Ill. Mar. 3, 2023).

More broadly, there is nothing nefarious about the State's decision to bring these claims in different lawsuits. They present different legal and factual issues. For example, this lawsuit includes specific causes of action under Illinois environmental laws that are absent from the other two lawsuits. *Compare* Doc. 1-1 at 42-54 *with* Complaint at 87-114, *People of the State of Ill. v. 3M Co.*, No. 1:23-cv-2620, ECF 1-1 (N.D. Ill. Apr. 26, 2023) *and* Complaint at 60-88, *People of the State of Ill. v. 3M Com.*, No. 1:23-cv-1341, ECF 1-2 (N.D. Ill. Mar. 3, 2023). And Cordova is a unique manufacturing facility on the bank of the Mississippi River, where 3M's own testing has already revealed highly elevated PFAS levels. Doc. 1-1 at 30. The State sensibly chose to pursue this matter separately, unencumbered by factfinding relating to other unknown sources of contamination or by consolidation with hundreds of other cases. Indeed, the Judicial Panel on Multidistrict Litigation endorsed this approach for cases presenting "site-specific issues, different modes of PFAS contamination, and different PFAS chemicals." *In re AFFF*, 357 F. Supp. 3d at 1396; *see also* Doc. 11 at 1-2 (reiterating this distinction).

In any event, this court need not consider 3M's policy arguments because the district court's remand order follows from a straightforward reading of the text of the federal officer removal statute and the court's precedents. 3M's argument, on the other hand, would expand federal officer jurisdiction to encompass cases that present "difficult causation questions," even when they do not connect to a federal issue. *E.g.*, AT Br. 27. 3M's approach would also jettison the basic rule that plaintiffs are "masters of the complaint," *Caterpillar*, 482 U.S. at 395, and would apply a more

lenient pleading standard to notices of removal, allowing "mere conclusory statements" about federal connections to create federal jurisdiction, *see Iqbal*, 556 U.S. at 678.

But even if this court were to look to policy considerations, 3M's unfounded fears of duplicative litigation are far outweighed by considerations that favor remand. Removing a case "brought by a state in its own courts" presents "sovereignty concerns." *LG Display Co. v. Madigan*, 665 F.3d 768, 774 (7th Cir. 2011). Accordingly, "'considerations of comity make [courts] reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it.'" *Id.* (quoting *Franchise Tax Bd. v. Const. Laborers Vacation Tr.*, 463 U.S. 1, 21 n.22 (1983)).  Conversely, the concerns animating the federal officer removal statute are not present here because this case does not present claims relating to 3M's production of MilSpec AFFF for the federal government, and so 3M is not "in danger of discrimination in state court." *Puerto Rico*, 2023 WL 4830569, at *2 (cleaned up). Policy considerations therefore support rather than undermine the district court's conclusion that, under a straightforward application of the federal officer removal statute, remand is required.

# CONCLUSION

For these reasons, the State requests that this court affirm the district court's order remanding this action to the Circuit Court of the Fourteenth Judicial Circuit, Rock Island County, Illinois.

Respectfully submitted,

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3000

Attorneys for Plaintiff-Appellee

/s/ Leigh J. Jahnig
**LEIGH J. JAHNIG**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 793-1473 (office)
(773) 590-7877 (cell)
Leigh.Jahnig@ilag.gov

March 13, 2024

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

I hereby certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 2019, in 12-point Century Schoolbook BT font, and complies with Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32 in that the brief contains 9,884 words.

/s/ Leigh J. Jahnig
LEIGH J. JAHNIG
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 793-1473 (office)
(773) 590-7877 (cell)
Leigh.Jahnig@ilag.gov

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on March 13, 2024, I electronically filed the foregoing Brief of Plaintiff-Appellee with the Clerk of United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

I further certify that the other participants in this appeal, named below, are registered CM/ECF users and will be served by the CM/ECF system:

Michael Anthony Scodro
mscodro@mayerbrown.com

Gary A. Isaac
gisaac@mayerbrown.com

Avi Kupfer
AKupfer@mayerbrown.com

/s/ Leigh J. Jahnig
LEIGH J. JAHNIG
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 793-1473 (office)
(773) 590-7877 (cell)
Leigh.Jahnig@ilag.gov