No. 23-3031

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

PEOPLE OF THE STATE OF ILLINOIS, ex rel. KWAME RAOUL,
Attorney General of the State of Illinois,

*Plaintiff-Appellee*,

v.

3M COMPANY,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Central District of Illinois
No. 4:22-cv-4075 (Hon. Sara Darrow)

**REPLY BRIEF OF APPELLANT 3M COMPANY**

Michael A. Scodro
Avi M. Kupfer
Gary A. Isaac
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
mscodro@mayerbrown.com

*Counsel for Appellant 3M Company*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................1

ARGUMENT ..............................................................................3

THE DISTRICT COURT HAS JURISDICTION UNDER THE
FEDERAL-OFFICER REMOVAL STATUTE. ............................3

    A.    This Case Relates To 3M's Supply Of MilSpec AFFF. .............3

        1.    Illinois' AFFF disclaimer does not sever the case's
connection to 3M's federal-government acts. ..................4

        2.    Courts do not permit plaintiffs to avoid removal by
disclaiming particular waste streams. ...........................7

            a.    *Baker v. Atlantic Richfield Co.* forecloses
Illinois' disclaimer argument. ...............................7

            b.    The decisions that Illinois cites do not
support remand. .....................................................14

        3.    The well-pleaded complaint rule does not apply to
federal-officer removal. ..................................................18

    B.    Illinois' New Position On Appeal Does Not Undermine
3M's Colorable Government-Contractor Defense. ..................20

    C.    Illinois' Policy Arguments Misconstrue Federal-Officer
Removal. ...............................................................................24

CONCLUSION ...........................................................................27

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Baker v. Atl. Richfield Co.*,
  962 F.3d 937 (7th Cir. 2020) ............................ 1, 4, 7-12, 14, 16-18, 24, 27

*Baker v. Atl. Richfield Co.*,
  421 F. Supp. 3d 634 (N.D. Ind. 2019) ...................................... 10

*Batchelor v. Am. Optical Corp.*,
  185 F. Supp. 3d 1358 (S.D. Fla. 2016) ...................................... 15

*Betzner v. Boeing Co.*,
  910 F.3d 1010 (7th Cir. 2018) ................................................... 19

*Bradley v. Vill. of Univ. Park*,
  59 F.4th 887 (7th Cir. 2023) ...................................................... 23

*California v. Eli Lilly & Co.*,
  2023 WL 4269750 (C.D. Cal. June 28, 2023) .......................... 17

*Caterpillar Inc. v. Williams*,
  482 U.S. 386 (1987) .................................................................. 18

*City of Hoboken v. Chevron Corp.*,
  45 F.4th 699 (3d Cir. 2022) ...................................................... 15

*Curiale v. A Clemente, Inc.*,
  2023 WL 4362722 (D.N.J. July 5, 2023) .................................. 13

*District of Columbia v. Exxon Mobil Corp.*,
  89 F.4th 144 (D.C. Cir. 2023) .................................................. 15

*Friedenberg v. Lane Cnty.*,
  68 F.4th 1113 (9th Cir. 2023) ................................................... 20

*Gov't of Puerto Rico v. Eli Lilly & Co.*,
  2023 WL 4830569 (D.P.R. July 13, 2023) .......................... 15, 26

*Grosch v. Tyco Fire Prods. LP*,
  2023 WL 5993548 (D. Ariz. Sept. 15, 2023) ............................ 15

ii

*Hammer v. HHS,*
905 F.3d 517 (7th Cir. 2018) ....................................................19

*Hayden v. 3M Co.,*
2015 WL 4730741 (E.D. La. Aug. 10, 2015) ...........................................17

*Jefferson Cnty., Ala. v. Acker,*
527 U.S. 423 (1999) ......................................................4

*Karmon v. Cal. Inst. of Tech.,*
2022 WL 102206 (C.D. Cal. Jan. 10, 2022) ...........................................15

*In re Katrina Canal Breaches Litig.,*
620 F.3d 455 (5th Cir. 2010) ..........................................21, 22

*Kelleher v. A.W. Chesterton Co.,*
2015 WL 7422756 (S.D. Ill. Nov. 23, 2015) ...........................................17

*Kircher v. Putnam Funds Tr.,*
547 U.S. 633 (2006) ......................................................19

*LG Display Co. v. Madigan,*
665 F.3d 768 (7th Cir. 2011) ..........................................26

*Maine v. 3M Co.,*
2023 WL 4758816 (D. Me. July 26, 2023), ...........................................17

*Minnesota v. Am. Petroleum Inst.,*
63 F.4th 703 (8th Cir. 2023)........................................4

*Moore v. Elec. Boat Co.,*
25 F.4th 30 (1st Cir. 2022) ......................................................20

*Nessel v. Chemguard, Inc.,*
2021 WL 744683 (W.D. Mich. Jan. 6, 2021)................................12, 13, 21

*New Hampshire v. 3M Co.,*
665 F. Supp. 3d 215 (D.N.H. 2023)................................17, 23, 24

*Ohio v. Ascent Health Servs. LLC,*
2024 WL 23187 (S.D. Ohio Jan. 2, 2024) ................................15

**Page(s)**

*Rhode Island v. Shell Oil Prods. Co.*,
    979 F.3d 50 (1st Cir. 2020)...................................................15

*Ruppel v. CBS Corp.*,
    701 F.3d 1176 (7th Cir. 2012) ........................................19, 22

*Vaden v. Discover Bank*,
    556 U.S. 49 (2009) .................................................................18

*Van Buren v. United States*,
    593 U.S. 374 (2021) .................................................................6

*Watson v. Philip Morris Cos.*,
    551 U.S. 142 (2007) .....................................................4, 25, 26

*Willingham v. Morgan*,
    395 U.S. 402 (1969) ...............................................................19

*Wood v. Crane Co.*,
    764 F.3d 316 (4th Cir. 2014) ................................................16

*Young v. Tyco Prods., LP*,
    2022 WL 486632 (9th Cir. 2022)..........................................16

**Statutes**

28 U.S.C. § 1331 ...........................................................................18

28 U.S.C. § 1407 .............................................................................7

28 U.S.C. § 1442(a)(1) .......................... 3, 4, 7, 12, 16, 18-20, 26, 27

# INTRODUCTION

Illinois hoped to insulate this case from federal-court review by split-ting claims alleging the presence of PFAS compounds in *the same* natural resources into three near-identical suits based on different PFAS-contain-ing products. But that maneuver cannot defeat federal-officer jurisdiction.

In 2011, Congress expanded federal-officer jurisdiction to encompass any case related, even if not causally, to acts taken under the federal gov-ernment. This case readily meets that standard. Illinois alleges that PFAS from 3M's Cordova facility was discharged into the Mississippi River Sys-tem and other natural resources. The removal notice plausibly alleged with supporting evidence that any such PFAS is commingled with PFAS from MilSpec AFFF that 3M manufactured under the military's direction. Illinois has not contested those allegations. And the parties agree that resolving this case will require complex fact-finding about commingled PFAS from MilSpec AFFF and non-AFFF sources. Illinois' litigation tactic—disclaim-ing damages from PFAS originating in AFFF—does not sever the connec-tion to MilSpec AFFF. As this Court held when confronting analogous cir-cumstances in *Baker v. Atlantic Richfield Co.*, 962 F.3d 937 (7th Cir. 2020), a plaintiff cannot insulate a case from federal-officer removal by disclaiming specific waste streams of chemicals that allegedly polluted its land.

To support remand, Illinois repeatedly invokes the stricter, pre-2011 removal standard, which required a causal connection between a plaintiff's

1

claims and a defendant's actions for the federal government. Illinois simply does not grapple with the fact that Congress removed that requirement when it amended the federal-officer removal statute. Nor does Illinois' invocation of the well-pleaded complaint rule have any bearing on the propriety of removal. That rule does not apply to federal-officer removal because the basis for such jurisdiction is not limited to the four corners of the complaint. Despite Illinois' protestations that this case is only about PFAS from the Cordova facility, the removal notice plausibly asserts that some of the PFAS allegedly in at-issue natural resources also came from MilSpec AFFF. The entire point of federal-officer removal is to permit a defendant to have a federal court decide a case like this one that is connected to its federal-government actions, despite the nonfederal cast of the complaint.

The Court also should affirm the district court's holding that 3M has a colorable government-contractor defense. The Supreme Court has rejected a narrow, grudging interpretation of the colorable-defense element of federal-officer removal. 3M will assert a contractor defense where MilSpec AFFF is a source of PFAS contamination. Further, Illinois previously asserted that it would seek to hold 3M liable for *all* PFAS at sites with *any* PFAS from the Cordova facility, even if some PFAS also came from MilSpec AFFF. That clearly implicates the contractor defense. Illinois' about-face on appeal only reinforces that 3M may well assert that defense.

The Court should reverse the district court's remand order.

# ARGUMENT

## THE DISTRICT COURT HAS JURISDICTION UNDER THE FEDERAL-OFFICER REMOVAL STATUTE.

Federal-officer removal is permissible when the defendant is a "person," the case is "for or relating to" the defendant's action under the federal government, and the defendant has a colorable federal defense. 28 U.S.C. § 1442(a)(1). There is no dispute that 3M is a person within the meaning of Section 1442(a)(1). This appeal primarily turns on the second element—whether the case is "for or relating to" 3M's actions directed by the military.

### A.     This Case Relates To 3M's Supply Of MilSpec AFFF.

This case relates to 3M's actions under the federal government because Illinois seeks damages for remediation in areas of the Mississippi River System that plausibly have PFAS both from 3M's Cordova facility and from MilSpec AFFF used at Rock Island Arsenal. Illinois does not contest those allegations, and it acknowledges that the factfinder must determine whether PFAS in at-issue natural resources is from Rock Island Arsenal. Nothing more is needed to satisfy the removal standard. Illinois incorrectly relies on the heightened, pre-2011 standard to argue that its AFFF disclaimer renders this case non-removable. It compounds that error by misreading controlling precedent and citing inapposite out-of-circuit cases.

### 1. Illinois' AFFF disclaimer does not sever the case's connection to 3M's federal-government acts.

Illinois' contention that the case does not relate to 3M's MilSpec AFFF supply because the complaint disavows damages from PFAS that came from AFFF (Br. 14-32) rests on a fundamental misconception of the federal-officer removal statute. Before 2011, a removing defendant had to plausibly allege that a lawsuit was "for"—*i.e.*, "causal[ly] connect[ed]" to, *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 431 (1999)—action it took under a federal officer. 28 U.S.C. § 1442(a)(1) (2006). Courts "liberally construed" even that requirement in favor of removal. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007). In 2011, Congress amended the statute to "lower" the removal barrier even further. *Minnesota v. Am. Petroleum Inst.*, 63 F.4th 703, 715 (8th Cir. 2023); *see* 3M Br. 22. The amended statute permits removal if the defendant plausibly alleges that the case is "for *or relating to*" action under a federal officer. 28 U.S.C. § 1442(a)(1) (emphasis added). As this Court recently recognized, removal thus is available in cases "not just *causally* connected, but alternatively *connected* or *associated*, with acts under color of federal office." *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 943 (7th Cir. 2020).

While Illinois pays lip service to that relaxed removal standard (Br. 28), it never actually engages with 3M's argument based on the amended statutory language that this case *relates to* its production of Mil-Spec AFFF—that notwithstanding Illinois' AFFF disclaimer, the factfinder

must determine the extent to which PFAS from MilSpec AFFF commingled with PFAS from the Cordova facility in at-issue natural resources. 3M Br. 21-24, 28-31. Rather, in applying law to fact, Illinois repeatedly uses the pre-2011 standard, which required a causal connection between the plaintiff's claims and the defendant's federal action. For example, Illinois argues over and over that remand is warranted because the AFFF disclaimer means that it seeks only damages "caused by" PFAS from the Cordova facility, Br. 10, 26, and not damages "from" PFAS stemming from MilSpec AFFF, *id.* at 4, 14; *see also id.* at 15-18, 20, 22-24. Illinois mischaracterizes 3M's argument along those same lines. *See, e.g.*, *id.* at 27.

The entire premise of Illinois' disclaimer argument is therefore incorrect. In contending that a plaintiff may defeat removal by disclaiming damages from a federal act, Illinois ignores the plain language of the federal-officer removal statute, which Congress expanded to permit defendants to remove cases "relating to" their federal actions. Illinois simply does not engage with the new rule.

Judged by the correct standard, this lawsuit relates to 3M's supply of MilSpec AFFF to the military. 3M Br. 21-27. Illinois broadly seeks damages from PFAS that came from the Cordova facility *everywhere* such PFAS is located in the Mississippi River System and other natural resources. *E.g.*, A84 ¶191 (alleging damages from PFAS discharges "from the Cordova Facility into the Mississippi River and other surface waters, groundwater, and

wetlands . . . around the Cordova Facility"); *see also* A52 ¶12; A57 ¶48; A63 ¶74; A68 ¶¶104, 107; A74-75 ¶¶134-36; A80 ¶173. PFAS in MilSpec AFFF from nearby Rock Island Arsenal plausibly commingled with PFAS from the Cordova facility in those same locations. *See* 3M Br. 23 (citing A28-29 ¶¶26-32). Indeed, Illinois alleges that PFAS "tend to be mobile in soil and ground-water systems" and "readily migrate in soil, groundwater, and surface water." A59 ¶¶57-58. It is no surprise, then, that 3M identified an additional source of PFAS in at-issue natural resources—MilSpec AFFF used at Rock Island Arsenal.

Illinois does not, and cannot, contest that at-issue natural resources contain commingled PFAS from Rock Island Arsenal and Cordova sources. In fact, Illinois concedes that "factual discovery and expert testimony" are needed to answer that question. Br. 24. The factfinder accordingly will need to assess whether any PFAS originated from MilSpec AFFF that 3M supplied to Rock Island Arsenal. And the need for that assessment means this case necessarily relates to 3M's work for the federal government.

Illinois' preferred rule—under which a plaintiff could eliminate federal-officer jurisdiction by "disclaiming recovery *for*" related federal acts, Br. 30 (emphasis added)—would render the 2011 amendment meaningless. That construction flouts the basic principle that Congress intends statutory amendments "to have real and substantial effect." *Van Buren v. United States*, 593 U.S. 374, 393 (2021). Once again, the previous version of the

removal statute required a causal connection between the claims and the federal act. But Congress expanded federal jurisdiction to encompass any suit "*connected* or *associated*," "not just *causally* connected," with an act under a federal officer. *Baker*, 962 F.3d at 943. The Court should reject Illinois' invitation to read that amendment out of the statute.[1]

### 2. Courts do not permit plaintiffs to avoid removal by disclaiming particular waste streams.

#### a. *Baker v. Atlantic Richfield Co.* forecloses Illinois' disclaimer argument.

Besides disregarding the text of the federal-officer removal statute, Illinois misconstrues this Court's controlling decision in *Baker v. Atlantic Richfield Co.*, *supra.*, which applied that statute to a near-identical situation, as well as other on-point cases.

i. In *Baker*, this Court "join[ed] all the courts of appeals" by "replac[ing]" the federal-officer removal statute's "causation" requirement "with [a] connection" requirement in light of the 2011 amendment. 962 F.3d at 944. *Baker* then reversed the district court's remand order. *Id.* The *Baker* plaintiffs were residents who alleged that manufacturers including DuPont

---

[1] Illinois' discussion (Br. 7-8) of the JPML's order denying transfer of this case to the AFFF multidistrict litigation is immaterial. JPML transfer and federal-officer removal are governed by different legal standards. *Compare* 28 U.S.C. § 1442(a)(1), *with id.* § 1407. Regardless, the JPML noted that transfer ultimately may be warranted if "discovery and pleading practice . . . demonstrate" that this case is "an AFFF case." Order 2, *In re AFFF Litig.*, MDL No. 2873 (J.P.M.L. Aug. 3, 2022), ECF No. 1510.

caused arsenic and lead contamination of their properties. *Id.* at 940. The residents disclaimed any damages from Freon-12. *Id.* But DuPont plausibly alleged that waste streams from Freon-12 it produced for the government "resulted in" some of the arsenic and lead contamination. *Id.* at 941. That was enough to support removal. "[E]ven if the Residents eventually prove that the Companies' pollution occurred because of acts not directed by the federal government," the Court explained, "it is still enough for . . . removal that at least some of the pollution arose from the federal acts." *Id.* at 945.

*Baker* rejected the residents' argument that their disclaimer of damages stemming from the "manufacture of Freon-12 for the government" defeated removal. 962 F.3d at 945 n.3. The "parties dispute[d] whether the Residents' injuries ar[o]se from products DuPont manufactured for the federal government." *Id.* But DuPont's removal notice plausibly alleged that its "Freon-12 production resulted in waste streams that contained lead and arsenic" and reached the residents' property, which was sufficient to support removal. *Id.* The residents could not "have it both ways" by seeking damages for exposure to lead and arsenic while disclaiming a federal source of those chemicals. *Id.*

That reasoning compels the same result here. *See* 3M Br. 24-27. Illinois seeks damages for PFAS contamination. It alleges that PFAS from 3M's Cordova facility migrated to the Mississippi River System and other nearby natural resources. 3M plausibly alleged in its removal notice that those

same natural resources contain PFAS from MilSpec AFFF that it made for use at Rock Island Arsenal. *Id.* at 22-24. This case therefore may raise "questions about whether [3M's PFAS] that allegedly caused the . . . injuries flowed from [3M's] . . . production for the federal government or from [its] more general manufacturing operations outside those confines." *Baker*, 962 F.3d at 944. That is precisely the kind of "difficult causation question that a federal court should be the one to resolve." *Id.* at 945 n.3. Illinois cannot do away with that connection—which warrants removal—simply by disclaiming damages from PFAS stemming from MilSpec AFFF.

Illinois' attempts to distinguish *Baker* (Br. 22-25) are unavailing. First, Illinois argues (Br. 22-23 n.5) that *Baker*'s rejection of the residents' disclaimer argument is not binding because the Court separately held that DuPont's co-defendant, Atlantic Richfield, established federal-officer jurisdiction. But Illinois is wrong that the disclaimer analysis was unnecessary to *Baker*'s holding. *Baker* addressed the defendants together. 962 F.3d at 943-45. This Court looked to "whether the polluting conduct the Residents complain[ed] of relate[d] to the federal directives the Companies acted under." *Id.* at 943. *Baker* did not independently evaluate federal-officer jurisdiction for Atlantic Richfield. Rather, it considered all of the defendants' alleged federal actions and concluded that it was "enough . . . that at least some of the pollution arose from the federal acts" regardless of whether "the Companies' pollution occurred because of acts not directed by the federal

government." *Id.* at 945. That holding would not have made sense if the residents' disclaimer had been effective, because the federal acts no longer would have been at issue. *Baker*'s disclaimer holding thus is controlling.

Illinois also attempts (Br. 22-23) to distinguish its AFFF disclaimer from the *Baker* residents' Freon-12 disclaimer. Illinois claims that it "unambiguously disclaimed" damages from AFFF, whereas the *Baker* residents purportedly continued to seek damages that "arose from" Freon-12. Br. 23. But that is incorrect. The *Baker* residents alleged that their lawsuit did "not pertain to DuPont's manufacture and production of Freon-12." First Amended Complaint ¶67, Baker v. Atl. Richfield Co., No. 17-cv-429 (N.D. Ind. Oct. 23, 2017), ECF No. 13. The district court credited that disclaimer, holding that the residents "specifically waive[d] claims related to Freon production." *Baker v. Atl. Richfield Co.*, 421 F. Supp. 3d 634, 644 (N.D. Ind. 2019). This Court accordingly understood the disclaimer to mean "that the Residents were not suing DuPont over its Freon-12 production." *Baker*, 962 F.3d at 941.

As in *Baker*, Illinois seeks to recover property damage from particular chemicals (PFAS compounds) while carving out certain sources of those chemicals ("any PFAS . . . from" AFFF, A52 ¶11).[2] That disclaimer purports

---

[2] Illinois erroneously contends that MilSpec AFFF is a "different chemical" than PFAS. Br. 14. MilSpec AFFF is a firefighting product, not a chemical. *See* 3M Br. 5-7. It contains some of the same PFAS compounds as those that

to serve the exact same purpose as the *Baker* disclaimer: separating out Illinois' "injuries [that] flowed from [3M's] . . . production for the federal government . . . from [3M's] more general manufacturing operations." *Baker*, 962 F.3d at 944. *Baker* made clear that the extent to which those injuries are separable "are *merits questions* that a federal court should decide." *Id.*

Illinois also tries but fails to distinguish (Br. 22-23) the factual allegations supporting removal in *Baker*. Illinois argues that the "complained-of" PFAS in this case "flowed from . . . the Cordova facility" and not from Mil-Spec AFFF used at Rock Island Arsenal. Br. 24. But that is the exact same argument that failed in *Baker*. There, the residents sued DuPont for lead and arsenic on their properties but disclaimed damages from a particular source, *i.e.*, "Freon-12 production." 962 F.3d at 945 n.3. *Baker* held that the residents could not avoid federal court by disclaiming particular "waste streams that contained" the chemicals that allegedly damaged their properties. *Id.*

Here too, the factfinder necessarily must determine how much of a given chemical originated from a purportedly carved-out federal waste

_____

allegedly came from the Cordova facility. *Id.* at 23; *see* A20-21 ¶¶1-2; A27 ¶22; A28 ¶¶26-27. Illinois has acknowledged that fact. *Compare* A52 ¶11 (disclaiming damages from AFFF "containing PFOA [and] PFOS"), *with* A56-57 ¶¶43, 46; A68-70 ¶¶109-12; A72-75 ¶¶130-37 (alleging PFOA and PFOS are in at-issue natural resources due to Cordova operations). And Illinois has provided no evidence that it will be able to distinguish among the sources of those PFAS chemicals at any given site. *See* 3M Br. 23.

stream. Indeed, Illinois acknowledges that "determining the source of at least some of the [PFAS] will likely require factual discovery and expert testimony." Br. 24. Illinois argues that its alleged injuries "arise from" PFAS that originated from the Cordova facility rather than Rock Island Arsenal. *Id.* But as *Baker* explained, it does not matter for removal purposes whether a plaintiff "*eventually* prove[s] that the . . . pollution occurred because of acts not directed by the federal government." 962 F.3d at 945 (emphasis added). The federal-officer removal statute makes federal courts responsible for determining the extent to which those claims implicate federal conduct.

Illinois also is incorrect that removal in these circumstances somehow would "expand federal jurisdiction." Br. 16, 21, 29, 31. Congress decides the scope of federal jurisdiction, and this case fits squarely within the terms of the statute. As in *Baker*, the complaint here alleges that a given area contains chemicals that came from multiple potential waste streams, and the removal notice plausibly alleged that some of those streams stem from work done for the federal government. Removal is warranted in these circumstances because the need to resolve those causation questions means that the case "relat[es] to" the defendant's federal actions. 28 U.S.C. § 1442(a)(1).

ii. Illinois fails to distinguish decisions that reached the same conclusion as *Baker* when confronting AFFF disclaimers. Specifically, Illinois argues (Br. 26) that *Nessel v. Chemguard, Inc.*, 2021 WL 744683 (W.D. Mich.

Jan. 6, 2021), is distinguishable because the disclaimer in that case applied only to MilSpec AFFF, whereas Illinois' disclaimer applies to all AFFF products. But that distinction is irrelevant. As in *Nessel*, Illinois has disclaimed damages from PFAS stemming from products 3M made for the federal government. The amount of PFAS from MilSpec AFFF in at-issue natural resources needs to be determined regardless of whether Illinois purported to disclaim other AFFF products as well. *Nessel* thus held, in words equally applicable here, that a federal court should be the one to determine whether purported injuries from the very same PFAS chemicals in MilSpec AFFF and non-federal PFAS products "can be distinguished." 2021 WL 744683, at *3.

The fact that the *Nessel* plaintiff "sought recovery for 'contamination throughout the state,'" IL Br. 26, is also irrelevant. Illinois seeks to recover for PFAS in an area—the Mississippi River System and other natural resources downriver from the Cordova facility—that indisputably contains PFAS from MilSpec AFFF. It does not matter whether that geographic area is statewide. What matters is that this case, like *Nessel*, will involve a "detailed fact-finding process" about the potential sources of PFAS to determine the extent to which at-issue natural resources contain PFAS from MilSpec AFFF. 2021 WL 744683, at *3.

Illinois' attempt to distinguish *Curiale v. A Clemente, Inc.*, 2023 WL 4362722 (D.N.J. July 5, 2023), also fails. There, a plaintiff sought damages

for alleged PFAS-related injuries and disclaimed harm from the defendant's government contracts, yet the court denied remand because the case none-theless "encompass[ed] the chemicals that are the subject of the government contracts." *Id.* at *6. Illinois argues (Br. 27) that the *Curiale* disclaimer was ineffective because those plaintiffs disavowed the defendant's conduct directed by the government rather than the underlying chemicals. But that is precisely what the *Baker* residents did and what Illinois did here. Illinois seeks to hold 3M liable for PFAS compounds allegedly present in natural resources downriver from the Cordova facility, while disavowing damages from certain PFAS sources. Yet 3M plausibly alleged that the PFAS compounds in those natural resources stem at least in part from MilSpec AFFF that it made for the federal government. As in *Baker*, Illinois' disclaimer does not change the fact that this case relates to MilSpec AFFF.

### b. The decisions that Illinois cites do not support remand.

Illinois relies on cases from other circuits to argue (Br. 16-20, 31-32) that courts have issued remands based on similar disclaimers. To begin, *Baker*—and not those decisions—is controlling. Regardless, those decisions are inapposite or unpersuasive.

Most of the cases Illinois cites are distinguishable because the plaintiffs' claims, at least according to those courts, were easily separable from the defendants' actions that arguably gave rise to federal-officer removal.

For example, Illinois relies chiefly on *City of Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022), to argue (Br. 16-17, 25, 30-31) that courts allow plaintiffs to evade removal by disclaiming recovery from federal sources. But *City of Hoboken* was a "*global* climate change" case involving tort claims against oil companies for fossil-fuel emissions worldwide. 45 F.4th at 706. The court held that the plaintiff's disclaimer of harm from fuel provided to the federal government ("less than 1/800th" of global energy consumption) legitimately "carve[d] out a small island" that would have "needlessly complicate[d] the[] case[]." *Id.* at 713; *see also Karmon v. Cal. Inst. of Tech.*, 2022 WL 102206, at *5 (C.D. Cal. Jan. 10, 2022) (federal actions were "discrete" and "severable"); *Batchelor v. Am. Optical Corp.*, 185 F. Supp. 3d 1358, 1364 (S.D. Fla. 2016) (similar). Other cases Illinois cites likewise did not, according to those courts, require the factfinder to resolve thorny causation questions about a defendant's federal actions.[3]

---

[3] *E.g.*, *District of Columbia v. Exxon Mobil Corp.*, 89 F.4th 144, 156-57 (D.C. Cir. 2023) (consumer-protection plaintiff sought damages for misleading advertising); *Rhode Island v. Shell Oil Prods. Co.*, 979 F.3d 50, 60 (1st Cir. 2020) (similar); *Ohio v. Ascent Health Servs. LLC*, 2024 WL 23187, at *3 (S.D. Ohio Jan. 2, 2024) (claims limited to "discrete and readily identifiable category"); *Gov't of Puerto Rico v. Eli Lilly & Co.*, 2023 WL 4830569, at *1 (D.P.R. July 13, 2023) (same); *see also Grosch v. Tyco Fire Prods. LP*, 2023 WL 5993548, at *1 (D. Ariz. Sept. 15, 2023) (plaintiff alleged that he was "never exposed to . . . MilSpec AFFF").

In contrast, the disclaimer here does not alleviate the need to resolve factual questions about the extent to which 3M's federal activity caused the alleged pollution of at-issue natural resources. This litigation will require the factfinder to resolve a host of causation questions about whether the same PFAS compounds from the Cordova facility and from MilSpec AFFF used at Rock Island Arsenal commingled in the Mississippi River System and other natural resources downriver from the Cordova facility. *See* 3M Br. 32-35. This case, like *Baker*, thus will require the factfinder to resolve "difficult causation question[s]"—and it therefore should be resolved in federal court. 962 F.3d at 945 n.3.

Illinois also cites (Br. 17-18) cases purportedly involving disclaimers comparable to its AFFF disclaimer. A number of those decisions did not involve complaints with waste-stream disclaimers. *E.g.*, *Young v. Tyco Prods., LP*, 2022 WL 486632 (9th Cir. 2022). The other decisions (mostly unpublished district court orders) did not consider the controlling question of whether a case "relat[es] to" the defendant's actions under a federal officer when resolving it requires answering difficult causation questions concerning those actions. 28 U.S.C. § 1442(a)(1). *Baker* explains why such a case may be removed to federal court.

Further, none of those cases involved the claim splitting that Illinois is engaged in here because the plaintiffs agreed not to seek damages for injuries caused by federal actions. *See, e.g.*, *Wood v. Crane Co.*, 764 F.3d 316,

321 (4th Cir. 2014); *California v. Eli Lilly & Co.*, 2023 WL 4269750, at *6 (C.D. Cal. June 28, 2023); *Kelleher v. A.W. Chesterton Co.*, 2015 WL 7422756, at *1 (S.D. Ill. Nov. 23, 2015); *Hayden v. 3M Co.*, 2015 WL 4730741, at *3-4 (E.D. La. Aug. 10, 2015). The plaintiffs in those cases thus did not pursue Illinois' approach to divide up damages among three suits involving the same PFAS compounds and natural resources.

The only cases Illinois cites involving that kind of claim splitting are three recent remand orders in which state plaintiffs brought PFAS claims and, like Illinois, disclaimed damages from AFFF. *See* Order, *South Carolina v. 3M Co.*, No. 2:23-cv-05979 (D.S.C. Feb. 29, 2024), ECF No. 13, *appeal pending*, No. 24-1270 (4th Cir.); *Maine v. 3M Co.*, 2023 WL 4758816 (D. Me. July 26, 2023), *appeal pending*, No. 23-1709 (1st Cir.); *New Hampshire v. 3M Co.*, 665 F. Supp. 3d 215 (D.N.H. 2023), *appeal pending*, No. 23-1362 (1st Cir.). As an initial matter, each of those orders is on appeal. And in any event, the orders do not support remand.

First, Illinois fails to explain how those orders warrant deviation from *Baker*. Moreover, like the district court here, those orders erroneously applied the pre-2011 standard requiring a causal connection between the claims and the defendant's federal act. *New Hampshire*, 665 F. Supp. 3d at 227-28 (finding no relation because "there is no scenario under which 3M could be found liable for any damages *caused by* AFFF" (emphasis added)); *see* Order 5, *South Carolina* (adhering to *New Hampshire*); *Maine*, 2023 WL

4758816, at *10 (same). Accordingly, the orders did not consider the controlling question of whether, under the applicable standard, those cases belong in federal court because they will involve "difficult causation question[s]," *Baker*, 962 F.3d at 945 n.3, about the supply, use, and movement of MilSpec AFFF. *See* 3M Br. 28-29.

### 3. The well-pleaded complaint rule does not apply to federal-officer removal.

Illinois repeatedly contends that upholding removal based on 3M's supply of MilSpec AFFF that is related to, but did not cause, Illinois' alleged injuries would violate the "basic rule that plaintiffs are 'masters of the complaint,'" Br. 35-36 (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 395 (1987)), and permit 3M to "manufacture jurisdiction by expanding the . . . complaint," *id.* at 21; *see id.* at 11, 27, 29-30. That is incorrect.

Illinois appears to invoke the well-pleaded complaint rule, which "govern[s]" the "presence or absence of federal-question jurisdiction" under 28 U.S.C. § 1331. *Caterpillar*, 482 U.S. at 392. Under that rule, a suit "aris[es] under" federal law, 28 U.S.C. § 1331, "only when the plaintiff's statement of his own cause of action shows that it is based upon federal law," *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) (alterations omitted).

But the well-pleaded complaint rule does not apply to federal-officer removal under 28 U.S.C. § 1442(a)(1). "Section 1442(a) is an exception to the 'well-pleaded complaint' rule" that allows removal to federal court

"despite the nonfederal cast of the complaint." *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 645 n.12 (2006). Indeed a "primary purpose" of the federal-officer removal statute is to litigate federal defenses to state-law claims in federal court. *See Willingham v. Morgan*, 395 U.S. 402, 407 (1969). Section 1442 thus permits removal where a case "presents a federal question beyond the narrow confines of the complaint." *Hammer v. HHS*, 905 F.3d 517, 525 (7th Cir. 2018); *see Ruppel v. CBS Corp.*, 701 F.3d 1176, 1180 (7th Cir. 2012). Defendants therefore often support federal-officer removal with allegations from outside the complaint. *E.g.*, *Betzner v. Boeing Co.*, 910 F.3d 1010, 1013, 1015 (7th Cir. 2018).

That is what 3M did here. *See* 3M Br. 11-13, 32-33. The removal notice asserted that some of the PFAS in the Mississippi River System and other at-issue natural resources plausibly came from MilSpec AFFF used at Rock Island Arsenal. A32-34 ¶¶40-41. 3M supported those allegations with an Army Corps report identifying the potential for commingling of PFAS from AFFF and non-AFFF sources at sites for which Illinois seeks recovery. A151. Illinois does not dispute those allegations. In fact, it acknowledges (Br. 24) that this case will require detailed fact-finding to determine the extent to which PFAS in at-issue natural resources came from MilSpec AFFF. The allegations in the removal notice thus support federal-officer removal notwithstanding "the nonfederal cast of [Illinois'] complaint." *Kircher*, 547 U.S. at 645 n.12.

For the same reason, Illinois is incorrect that 3M has "expand[ed]" or "rewr[itten]" any of Illinois' claims. Br. 21-22; *see id.* at 11. The removal notice did what Section 1442 contemplates: It alleged that Illinois' lawsuit is related to the work 3M did at the federal government's direction despite the fact that the complaint did not spell out that connection. *See* A27-30 ¶¶24-33. In doing so, 3M did not alter any of Illinois' claims but rather presented "sufficient facts to invoke § 1442 as a basis for removal." *Friedenberg v. Lane Cnty.*, 68 F.4th 1113, 1123 (9th Cir. 2023).

### B.  Illinois' New Position On Appeal Does Not Undermine 3M's Colorable Government-Contractor Defense.

The district court held that 3M has a colorable government-contractor defense. A7-8. 3M's opening brief explained that the colorable-defense element and the relating-to element are separate requirements for federal-officer removal, and that 3M is challenging the district court's holding on the latter. Br. 31-38. 3M further explained that the court nonetheless erred in reasoning that 3M's federal defense is "irrelevant." *Id.*

Illinois contends (Br. 30-34) that the district court's colorable-defense holding was incorrect. Yet the bar for demonstrating a colorable federal defense on removal is very low. Such a defense is colorable "unless it is immaterial and made solely for the purpose of obtaining jurisdiction or wholly insubstantial and frivolous." *Moore v. Elec. Boat Co.*, 25 F.4th 30, 37 (1st Cir. 2022) (internal quotations omitted). And as with the relating-to

element, Illinois' contention that 3M does not have a colorable government-contractor defense rests entirely on its erroneous disclaimer argument.

Illinois contends that the disclaimer obviates the need for 3M to assert a contractor defense "based on its production of MilSpec AFFF." Br. 33. According to Illinois, if 3M establishes that MilSpec AFFF caused "some or all of the contamination," then the AFFF disclaimer will prevent the court from holding 3M liable "regardless of whether the government-contractor defense applies." *Id.* at 30-31. As an initial matter, Illinois offers conflicting positions on this point, arguing in one place that 3M cannot be held liable for PFAS at a particular site if "some" of that PFAS came from MilSpec AFFF, *id.* at 30, but then asserting that the "portion" of damages "attributable to AFFF" should be "subtracted from any damages award," *id.* at 32; *see id.* at 24.

Regardless, Illinois misunderstands the government-contractor defense. All agree that, given the disclaimer, Illinois may recover damages only for alleged PFAS from non-AFFF sources. To prevent Illinois from recovering, 3M will seek to show that a portion of the alleged PFAS in at-issue natural resources came from MilSpec AFFF. Illinois "cannot prevent [3M] from raising the production of MilSpec AFFF as a defense." *Nessel*, 2021 WL 744683, at *3. Each time 3M asserts that some of the PFAS at issue stems from its MilSpec AFFF production, it will be raising its federal defense and arguing that because "[t]he Government made [3M] do it," *In re Katrina*

*Canal Breaches Litig.*, 620 F.3d 455, 465 (5th Cir. 2010), 3M is immune from liability, *see Ruppel*, 701 F.3d at 1183. That is more than enough to clear the low bar for a colorable federal defense. *See id.* at 1182 (on removal, a defense need "only be colorable, instead of 'clearly sustainable'").

3M also explained that it will assert the government-contractor defense if Illinois follows through on its plan to seek to hold 3M liable for *all* PFAS contamination at sites with *any* PFAS from the Cordova facility. 3M Br. 33-38. Through its complaint, Illinois seeks to hold "3M liable for all past and future natural resource damages" of sites with PFAS from the Cordova facility. A98 ¶248(b); A101 ¶259(b); *see* A92 ¶222(b) (similar). Illinois' remand motion doubled down on this demand by arguing that the district court should not "excuse[]" 3M "from liability for damages *caused by . . . MilSpec AFFF*" because Illinois is asserting common-law claims through which it will seek to hold 3M "jointly and severally liable" for natural resource damages "caused by [3M's] discharge of PFAS waste from its Cordova Facility." A218 & n.4 (emphasis added) (citing Illinois joint-and-several-liability statute).

Thus, under Illinois' theory as articulated in the district court, state law allows it to recover in this case all damages to a natural resource stemming from PFAS if it establishes that some portion of the PFAS came from the Cordova facility. That would hold true, according to Illinois, even if some or most of the PFAS at issue actually was "caused by . . . MilSpec AFFF."

A218. If Illinois pursues that approach, 3M would be entitled to assert its government-contractor defense to argue that state remedy rules cannot be applied to hold 3M responsible for any harm attributable to MilSpec AFFF. 3M Br. 34-38.

Illinois does not engage with that legal argument. Instead, Illinois backtracks (Br. 31-32) on its statements in the district court. Illinois' new position is that 3M's government-contractor defense is not colorable because the "portion" of Illinois' damages attributable to AFFF will be "subtracted from any damages awarded" and that "no damages could be awarded" if the factfinder cannot determine the source of the PFAS. Br. 32 (quoting *New Hampshire*, 665 F. Supp. 3d at 228). The Court should not entertain Illinois' new argument, *see Bradley v. Vill. of Univ. Park*, 59 F.4th 887, 897 (7th Cir. 2023), but it is incorrect in any event. Illinois tries to paper over its change in position by asserting that it will only seek recovery "for contamination caused by PFAS from the Cordova facility." Br. 31. But that assertion directly contradicts Illinois' previous position that 3M is liable in this case for all PFAS contamination of a given site if some of the PFAS at that site was "caused by . . . MilSpec AFFF." A218.

While 3M appreciates Illinois' change in position, the inconsistency only reinforces that 3M may have to assert its government-contractor defense when this case ultimately is tried. And Illinois' new position is particularly dubious in light of its reliance for that point on the *New Hampshire*

remand order.[4] In that case, New Hampshire purported to disclaim damages for AFFF contamination, and the district court remanded to state court. 665 F. Supp. 3d at 227. But then on appeal, New Hampshire's counsel asserted that based on New Hampshire joint-and-several liability principles, 3M could be held responsible for *all* PFAS at a given site, including from MilSpec AFFF. *See* Oral Argument, *New Hampshire v. 3M Co.*, No. 23-1362 (1st Cir. Oct. 2, 2023), https://bit.ly/40ZVVQz (20:11–21:15). There is no guarantee that Illinois will stick to its new position on damages rather than, like New Hampshire, pivot when doing so is advantageous.

Given these outstanding issues and the contradiction in Illinois' approaches to liability, 3M has at the very least shown that it has a colorable government-contractor defense in this case. Because the Court's "role at this stage of the litigation is to credit only [3M's] theory," *Baker*, 962 F.3d at 947, the Court should hold that 3M has plausibly alleged a colorable federal defense.

### C. Illinois' Policy Arguments Misconstrue Federal-Officer Removal.

Illinois' policy arguments misconstrue the federal-officer removal statute. That statute's "basic purpose" is to "protect the Federal

---

[4] Separately, Illinois does not explain how a district court order considering a different state's remedy regime bears on Illinois damages law or controls how Illinois will pursue damages in this case.

Government from the interference with its operations that would ensue were a State able" to sue a federal officer in "State court for an alleged" violation of state law based on acts "within the scope" of the officer's authority. *Watson*, 551 U.S. at 150. Those concerns are implicated whenever "a private person acts as an assistant to a federal official in helping that official" carry out federal operations. *Id.* at 151.

Illinois tries minimizing the potential fallout from endorsing its multi-suit approach, arguing that "[t]his case is about . . . Cordova" and its other lawsuits concern "different legal and factual issues." Br. 34-35. That is incorrect. This case will involve complex factfinding about PFAS stemming from multiple waste streams, including the Cordova facility, Rock Island Arsenal, and other potential PFAS sources. If Illinois' removal arguments succeed, 3M will have to litigate the scope and causes of PFAS in the same natural resources across three lawsuits in state and federal court. And further complications will arise when the courts overseeing these cases must decide what effect, if any, factual findings made in one suit have on the other suits. Other plaintiffs have already copied and will continue to copy Illinois' approach by filing multiple lawsuits to have several bites at the damages apple. Illinois has no response to these concerns other than to deny their reality.

Illinois also suggests that the principles animating federal-officer removal yield to "sovereignty concerns" when states sue in their own courts.

Br. 36. That argument contravenes the fundamental purpose of federal-officer removal—to prevent "States from paralyzing the Federal Government and its initiatives" through state-court suits against those carrying out federal-government operations. *Watson*, 551 U.S. at 149. All federal-officer removal cases involve state-law claims, and many are brought by states themselves. But Congress decided that the need to protect federal operations from state interference is so great that all state-court lawsuits, not just "for," but also "relating to," actions directed by the federal government should be removable. 28 U.S.C. § 1442(a)(1).

The cases Illinois cites (Br. 36) do not support its sovereignty argument. One was not even a federal-officer removal case. *LG Display Co. v. Madigan*, 665 F.3d 768 (7th Cir. 2011). The other is a remand order currently on appeal in which the court noted, after holding that removal was unwarranted, that "[p]olicy considerations," including comity, "also favor[ed] remand." *Puerto Rico v. Eli Lilly & Co.*, 2023 WL 4830569, at *2 (D.P.R. July 13, 2023), *appeals pending*, Nos. 23-1612, 23-1613 (1st Cir.). That "policy" coda did not interpret 28 U.S.C. § 1442(a)(1), much less consider (or purport to defy) the instruction to liberally construe the statute to protect federal operations from state interference.

Finally, upholding removal here would not open the doors of the federal courts to any cases that "present 'difficult causation questions,' even when they do not connect to a federal issue." IL Br. 35. Removal is allowed

under Section 1442 only when a defendant plausibly alleges that the suit is connected or associated with its action under a federal officer. *Baker*, 962 F.3d at 941. That is the case here. Illinois' complaint alleges PFAS contamination of the Mississippi River System and other natural resources near the Cordova facility. 3M's removal notice plausibly alleged with ample supporting evidence that, notwithstanding Illinois' AFFF disclaimer, MilSpec AFFF is a potential source of PFAS in at-issue natural resources. As in *Baker*, 3M plausibly asserted that it made products for the military that "resulted in waste streams" that reached the properties at issue and "contained" the same chemicals that allegedly polluted those properties. *Id.* at 945 n.3; *see* A21 ¶3. In these narrow circumstances, the low threshold for federal-officer removal is met.

## CONCLUSION

The Court should reverse and remand with instructions that the district court recall its remand to the state court.

Dated: April 3, 2024                    Respectfully submitted,

                                        /s/ *Michael A. Scodro*

                                        Michael A. Scodro
                                        Avi M. Kupfer
                                        Gary A. Isaac
                                        MAYER BROWN LLP
                                        71 South Wacker Drive
                                        Chicago, IL 60606
                                        (312) 782-0600
                                        mscodro@mayerbrown.com


                        *Counsel for Appellant 3M Company*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(g), undersigned counsel certifies that this brief:

(i)    complies with the type-volume limitation of Circuit Rule 32(c) because it contains 6,470 words; and

(ii)    complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Office Word 2016 and is set in Century Schoolbook font in a size equivalent to 14 points or larger.

*/s/ Michael A. Scodro*
Michael A. Scodro

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system on April 3, 2024. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Michael A. Scodro*
Michael A. Scodro